**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **BERT W. WHITTINGTON** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:21-cv-3220** |
| | § | |
| **KIRK WAYNE BONSAL, ET AL.** | § | |
| **Defendants.** | § | |

### DEFENDANT HARRIS COUNTY'S MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE JUDGE OF SAID COURT:

Defendant HARRIS COUNTY ("Harris County" or "the County") files this Motion for Summary Judgment pursuant to Rule 56, Federal Rules of Civil Procedure, and the Court's Order dated January 14, 2022 [Doc. #13]. In support, Harris County would respectfully show the Court as follows:

**TABLE OF CONTENTS**

Table of Contents ............................................................................................................. ii

I.      Statement Of Nature Of Case and Stage of Proceedings ............................................. 1

II.     Statement of Issues and Statement of Facts ................................................................ 1

    A.      Statement of Issues ............................................................................................ 1

    B.      Statement of Facts ............................................................................................. 2

III.    Summary Judgment Evidence ..................................................................................... 5

IV.     Summary of Argument ................................................................................................ 5

V.      Argument and Authorities ........................................................................................... 5

    A.      Standard of Review ............................................................................................ 5

    B.      Plaintiff's "Color" Claim Against Harris County Fails as a Matter of Law. ................ 6

    C.      Plaintiff's §1983 Claims Against Harris County Fail as a Matter of Law .................... 7

    D.      Plaintiff's Title VII Claims Against Harris County Fail as a Matter of Law. ............ 17

VI.     Conclusion ............................................................................................................... 22

# TABLE OF AUTHORITIES

**Cases**

*Abarca v. Metro. Transit Auth.*, 404 F.3d 938 (5th Cir. 2005) ...................................................... 17

*Agnew v. City of Bryan*, No. CIV.A. H-84-4407, 1986 WL 15158 (S.D. Tex. Dec. 23, 1986) ... 17

*Agresta v. Goode*, 797 F. Supp. 399 (E.D. Pa. 1992) .................................................................. 17

*Alexander v. Eeds,* 392 F.3d 138 (5th Cir.2004) ........................................................................ 13

*Anderson v. Lewis Rail Serv. Co.*, 868 F.2d 774 (5th Cir. 1989)................................................... 6

*Armstrong v. K&B Louisiana Corp.*, 488 F. App'x 779 (5th Cir. 2012).................................... 20

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ......................................................................................... 6

*Babin v. Breaux*, 587 Fed. Appx. 105 (5th Cir. 2014)................................................................ 10

*Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397 (1997)............................................. 8

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) .................................................................. 6

*Bennett v. City of Slidell,* 728 F.2d 762 (5th Cir. 1984) ............................................................... 7

*Bennett v. Hartford Ins. Co. of* Midwest, 890 F.3d 597 (5th Cir. 2018)....................................... 5

*Bolton v. City of Dallas, Texas*, 541 F.3d 545 (5th Cir. 2008) ..................................................... 9

*Bouillion*, 896 S.W.2d at 147 ..................................................................................................... 16

*Brim v. ExxonMobil Pipeline Co.*, 213 Fed.Appx. 303 (5th Cir. 2007) ..................................... 17

*Brown v. De La Cruz*, 156 S.W.3d 560 (Tex. 2004) ................................................................... 16

*Burnside v. Kaelin*, 773 F.3d 624 (5th Cir. 2014)....................................................................... 12

*Byers v. Dallas Morning News, Inc.*, 209 F.3d 419 (5th Cir. 2000) ........................................... 20

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ....................................................................... 6, 7

*Cervantez v. Bexar Cty. Civil Serv.*, 99 F.3d 730 (5th Cir. 1996) .............................................. 11

*Chandler v. Pilgrim's Pride Corp.,* No. 9:20-CV-78-MJT, 2021 WL 2946436 (E.D. Tex. July 14, 2021) .......................................................................................................................................... 17

*Chaney v. New Orleans Pub. Facility Mgmt., Inc.,* 179 F.3d 164 (5th Cir. 1999) ....................... 22

*Charles v. Grieff,* 522 F.3d 508 (5th Cir. 2008). .................................................................. 14

*Christian v. City of Dallas,* 64 F. Supp. 2d 617 (N.D. Tex. 1998) ........................................ 10, 11

*City of Arlington v. Randall*, 301 S.W.3d 896 (Tex. App.-Fort Worth 2009, pet. denied).......... 16

*City of Beaumont v. Bouillion*, 896 S.W.2d 143 (Tex. 1995) ...................................................... 16

*Clark County School Dist.v Breeden,* 532 U.S. 268 (2001) ........................................................ 22

*Cleveland Bd. Of Educ. v.Loudermill,* 470 U.S. 532 (1985) ...................................................... 11

*Conn. Gen. Life Ins. Co. v. Humble Surgical Hosp., LLC*, CIVIL ACTION NO. 4:13-CV-3291, 2016 WL 3077405 (S.D. Tex. June 1, 2016) (Hoyt, J.) ........................................................... 16

*Conner v. Travis County*, 209 F.3d 794 (5th Cir. 2000)............................................................... 8

*Connick v. Myers*, 461 U.S. 138 (1983)............................................................................... 13, 14

*Culwell v. City of Fort Worth*, 468 F.3d 868 (5th Cir. 2006) ...................................................... 18

*Davidson v. City of Stafford*, 848 F.3d 384 (5th Cir. 2017)........................................................ 10

*Davis v. Dallas Indep. Sch. Dist.*, 448 Fed.Appx. 485 (5th Cir. 2011) ....................................... 20

*Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003)....................................................................... 17

*Doe v. Edgewood Indep. Sch. Dist.*, 964 F.3d 351 (5th Cir. 2020).............................................. 5

*Donnelly v. Academic Partnerships, LLC,* 2021 WL 462052 (N.D. Tex. February 9, 2021). ....... 6

*Douglas v. DynMcDermott Petroleum Operations Co.*, 144 F.3d 364 (5th Cir. 1998)................ 20

*Estate of Davis ex rel. McCully v. City of North Richland Hills*, 406 F.3d 375 (5th Cir. 2005) .... 8

*Fairley v. Wal-Mart Stores, Inc.,* 216 F.Supp. 3d. 708 (E.D. Louisiana October 31, 2016) .......... 6

*Faragher v. City of Boca Raton,* 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) .......... 19

*Fiesel v. Cherry,* 294 F.3d 664 (5th Cir.2002)................................................................ 13

*Frank v. Xerox Corp.*, 347 F.3d 130 (5th Cir. 2003) .............................................. 18, 19

*Garcetti v. Ceballos,* 547 U.S. 410, 126 S. Ct. 1951 (2006), ....................................... 13

*Giles v. Gen. Elec. Co.*, 245 F.3d 474 (5th Cir. 2001)..................................................... 7

*Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993)................... 19

*Hurst v. Lee Cnty., Miss.,* 764 F.3d 480 (5th Cir. 2014), cert. denied, 135 S. Ct. 1179 (2015) ... 12

*In re Integrated Res., Inc. Real Estate Ltd. P'ships* Sec. Litig.,851 F. Supp. 556 (S.D.N.Y. 1994) ................................................................................................................. 17

*James v. Harris Cty.*, 577 F.3d 612 (5th Cir. 2009) ....................................................... 8

*Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293 (5th Cir. 2004).. 8

*Johnson v. Halstead*, 916 F.3d 410 (5th Cir. 2019)...................................................... 11

*Jones v. United States*, 936 F.3d 318 (5th Cir. 2019)..................................................... 5

*Jordan v. Ector County,* 516 F.3d 290 (5th Cir.2008)................................................... 15

*Juarez v. Aguilar*, 666 F.3d 325 (5th Cir. 2011)........................................................ 12

*Lauderdale v. Tex. Dep't of Criminal Justice, Institutional Div.*, 512 F.3d 157 (5th Cir. 2007).. 11

*Leal v. Hidalgo Cnty.*, CIVIL NO. M-07-272, 2008 WL 11391657 (S.D. Tex. Apr. 23, 2008).. 17

*Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298 (5th Cir. 2020)....................................... 6

*Manning v. Chevron Chem. Co.,* 332 F.3d 874 (5th Cir. 2003) ..................................... 22

*McCaig v. Wells Fargo Bank (Tex.), N.A.*, 788 F.3d 463 (5th Cir. 2015)......................... 16

*McCormick v. Stalder,* 105 F.3d 1059 (5th Cir. 1997) ............................................... 6, 9

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) .......................................... 17

*McDowell v. Home Depot, U.S.A.,* No. Civ. A 3:02-CV-1294-D, 2004 WL 594101 (N.D. Tex. Mar. 9, 2004)............................................................................................................ 22

*Monell v. New York City Dept. of Social Services*, 436 U.S. 658 (1978) ........................ 7

*Moore v. City of Kilgore,* 877 F.2d 364 (5th Cir.1989) ................................................ 13

*Neitzke v. Williams,* 490 U.S. 319 (1989).................................................................. 6, 9

*Pena v. City of Rio Grande City*, 879 F.3d 613 (5th Cir. 2018) ...................................... 7

*Piotrowski v. City of Houston*, 237 F.3d 567 (5th Cir. 2001)........................................ 7, 8

*Price v. Fed. Express Corp.*, 283 F.3d 715 (5th Cir. 2002)............................................ 18

*Price v. Jefferson Cnty.,* 470 F. Supp. 2d 665 (E.D. Tex. 2006). ................................... 12

*Prince v. Curry*, 2010 WL 1062611 (N.D. Tex. 2010)................................................... 8

*Rachid v. Jack in the Box, Inc.*, 376 F.3d 305 (5th Cir. 2004)........................................ 17

*Ragsdale v. Classroom Teachers of Dallas*, No. CIV.A.3:06CV863-H(BH), 2007 WL 426502 (N.D. Tex. Feb. 5, 2007).................................................................................................. 17

*Ramsey v. Henderson*, 286 F.3d 264 (5th Cir. 2002).................................................... 19

*Ratliff v. Aransas Cty.,* 948 F.3d 281 (5th Cir., 2020).................................................. 8

*Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000)................................. 18

*Trent v. Wade*, 776 F.3d 368 (5th Cir. 2015).............................................................. 5

*Turner v. Baylor Richardson Med. Ctr.,* 476 F.3d 337 (5th Cir. 2007)...................... 20, 21

*Univ. of Tex. Sys. v. Courtney*, 946 S.W.2d 464 (Tex.App.- Fort Worth 1997, writ denied) ...... 16

*Valle v. City of Houston*, 613 F.3d 536 (5th Cir. 2010)................................................. 9

*Vallecillo v. U.S. Dep't of Hous. & Urb. Dev.*, 155 F. App'x 764 (5th Cir. 2005) ........... 18, 19

*Vann v. City of Southaven, Miss.*, 884 F.3d 307(5th Cir. 2018) .................................... 5

*Wallace v. Texas Tech Univ.*, 80 F.3d 1042 (5th Cir. 1996)........................................ 11

*Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161 (5th Cir. 2010)............................. 9

iv

Statutes

42 U.S.C.S. § 2000e-5(e)(1). ................................................................................... 6
Fed. R. Civ. P. 56(a) ................................................................................................ 5
Texas Labor Code § 52.031 .................................................................................... 17

## I.   STATEMENT OF NATURE OF CASE AND STAGE OF PROCEEDINGS

1.      This case stems from the employment and termination of Bert Whittington ("Plaintiff" or "Whittington") an African American male, and allegations that Defendant Harris County[1] ("Defendant") discriminated against him and terminated him in retaliation for Plaintiff's comments during a discussion following the George Floyd murder.  [Doc. #1].  Plaintiff alleges a number of causes of action, all rooted from his claim of discrimination.  [Doc. #1, ¶¶ 53-61].

2.      On December 6, 2022, the Court granted the County's Unopposed Motion to Extend Briefing for its summary judgment motion to 30 pages.  [Doc. #27].

3.      The dispositive motion deadline is December 15, 2022.  [Doc. #13]. Harris County now moves for summary judgment on Plaintiff's claims against Harris County.

## II.   STATEMENT OF ISSUES AND STATEMENT OF FACTS

### A.  Statement of Issues

4.      The issues to be ruled upon by the Court regarding Harris County are as follows:

(a) Whether Plaintiff has exhausted his administrative remedies for his color claim.

(b) Whether Plaintiff has failed to show that Harris County is liable for alleged constitutional violations because a municipal policy or custom promulgated by a policymaker with deliberate indifference was the "moving force" or direct cause of Plaintiff's complained injury complained.

(c) Whether Plaintiff has demonstrated any viable causes of action under Section 1983.

(d) Whether Plaintiff has demonstrated that he was discriminated and retaliated against in violation of Title VII.

---

1.  [1] On January 14, 2022, the court dismissed all claims against the individual named defendants [Doc. #12]. Therefore, the only remaining defendant is Harris County.

### B. Statement of Facts

5. **Whittington's employment.** Plaintiff was hired to work for Harris County Constable Precinct 3 on or about January 30, 2017. [Doc #1, ¶ 20]. Shortly thereafter, he was assigned as a police canine handler in the Crime Interdiction Unit. [Doc #1, ¶ 20]. Following the illness of his first K9, Whittington obtained K9 Zane in or about July 2019. (Ex. 1). A K9 deployment on a suspect is considered a use of force. (Ex. 2, pp. 5-6). The responsibility for the decision to deploy a K9 always rests with the handler since the handler knows his K9. (Ex. 2, p. 2).

6. **The first dog bite.** On or about December 10, 2019, Whittington deployed Zane which resulted in the biting of a Harris County Constable Pct 3 deputy during the active pursuit of a suspect. (Ex. 3).

7. **The second dog bite.** Not soon thereafter, in or around January 24, 2020, Zane's unwarranted attacks escalated. This time, Zane attacked a Harris County Constable Precinct 3 sergeant and in the same pursuit, an innocent citizen bystander (Ex. 4), which resulted in costs to the County. (Ex.5). As K9 deployments and bites are viewed as use of force incidents, these confrontations require a review. (Ex. 6). During this process, the review was hindered by Whittington's failure, in violation of policy, to turn on his body worn camera which would have allowed a review of the circumstances surrounding Whittington's use of force. Whittington was thus reprimanded for this violation. (Ex. 7).

8. **The third dog bite.** By May 28, 2020, it was clear that despite Zane's limitations in training that were known to Whittington, Whittington deployed Zane to attempt to apprehend a suspect. (Ex. 11). Specifically, on May 28, 2020, Zane attacked a juvenile suspect who had already given up and surrendered. (Ex. 8). Yet again, Whittington did not have his body worn camera turned on to allow Harris County to review the circumstances at the time of Zane's deployment but turned it on after the attack once the juvenile suspect was in custody. *Id.* As a

result, Whittington received a suspension of one day for his repeated violation of the body worn camera policy during use of force incidents. (Ex. 9). When the juvenile suspect asked Whittington why he deployed the dog after he surrendered, Whittington remarked that his dog was young and "did not know what he was doing." (Exs. 8, 11). Due to the repetitive nature of dog bite incidents, the matter was referred for an internal affairs investigation. (Ex. 8).

9.      **The mishandling of evidence.** On May 28, 2020, the same day Zane bit the juvenile suspect, Whittington arrested an individual who was in possession of several narcotics, including 14.8 grams of cocaine. (Ex. 10).   Following Whittington's confiscation of the evidence, Whittington failed to properly maintain control of the evidence, and on one occasion turned his back on the prisoner seated in a room with the evidence. (Ex. 10).  Several days later, the cocaine was discovered missing by the medical examiner's office when they unsealed the bags that had been sealed and submitted as evidence for testing.  (Ex. 10).  Ultimately, the charges against the arrested individual were dropped because there was no cocaine evidence to prosecute.  (Ex. 10). An internal affairs investigation was therefore initiated to determine whether policy violations occurred.  (Ex. 10).

10.     **The internal affairs investigations.** Both the bite of the juvenile suspect and the mishandling of evidence incidents were the subjects of concurrent internal affairs investigations. For each investigation, the Chief Deputy of Harris County Constable Precinct 3, Chief Kirk Bonsal selected an investigator who was an experienced Lieutenant with Precinct 3. Both investigators were African American.  (Ex. 12, 99:11-13; Ex. 13, 40:18-19).  During the investigation for the mishandling of evidence, the arrested individual was questioned as to whether he had taken the cocaine evidence.  (Ex. 10). While he denied taking the cocaine, he admitted to taking some of the pills that were confiscated as evidence and ingesting them before he was taken to jail.  (Ex. 10).

3

In the course of the investigation for the dog bite of the juvenile suspect, it was discovered that Whittington admitted to the juvenile suspect that Zane did not know what it was doing. (Ex. 11). The investigators in both cases determined that Whittington committed policy violations, and the investigation report findings for both investigations were then referred to the Aministrative Disciplinary Committee ("ADC") for review. (Exs. 8 and 10). ADC is a body of supervisory employees with Harris County Constable Precinct 3 charged with making disciplinary recommendations to the Constable (Ex. 14). ADC reviewed the results of the two investigations during a lengthy meeting in which Whittington had the opportunity to be heard and members of ADC had the opportunity to ask questions of Whittington before making their disciplinary recommendation to the Constable. (Exs. 15, 16, 17, 18, 19).

11.     **Whittington's termination.** The majority of ADC voted to terminate Whittington. (Ex. 20). Because Constable Eagleton is the final decision maker on termination and disciplinary decisions, he reviewed ADC's recommendation and elected to terminate Whittington. (Ex. 21). On August 28, 2020, Whittington was terminated. (Ex. 22). Although he appealed his termination, Constable Eagleton upheld the termination on September 23, 2020. (Ex. 23).

12.     The ADC members were Bryant Howard (African American male), Herman Sanders (African American male), Jeff Gonzales (Hispanic male), Margaret Magana (Hispanic female), and Patrick Sullivan (Caucasian male). (Exs. 14 and 20). The ultimate decision maker was Constable Sherman Eagleton (African American male). (Exs. 14 and 21).

13.     At the time of his termination, Whittington had made no complaints of discriminatory employment practices or retaliation based on race or color. (Ex. 24, 82:11-17, 29, 30).

### III.     SUMMARY JUDGMENT EVIDENCE

14.     Harris County attaches and concurrently files the Appendix of Evidence in Support of Harris County's Motion for Summary Judgment, which is incorporated in its entirety by reference for all purposes.

### IV.     SUMMARY OF ARGUMENT

15.     Harris County is entitled to summary judgment as a matter of law because (a) Plaintiff's color claim exceeds the scope of his EEOC charge; (b) there is no evidence that an official county policy or custom was the moving force or direct cause of any injury complained of by Plaintiff; (c) Plaintiff fails to meet his burden to show any causes of action under Section 1983; and (c) Plaintiff fails to meet his burden to show any causes of action under Title VII.  Therefore, all of Plaintiff's claims against Harris County fail as a matter of law and must be dismissed.

### V.     ARGUMENT AND AUTHORITIES

**A.     Standard of Review**

16.     **Summary Judgment.** Summary judgment is proper under Rule 56 when the movant establishes that it is entitled to judgment as a matter of law because "there is no genuine dispute as to any material fact." *Trent v. Wade*, 776 F.3d 368, 376 (5th Cir. 2015); *see also* Fed. R. Civ. P. 56(a); *Vann v. City of Southaven, Miss.*, 884 F.3d 307, 309 (5th Cir. 2018) (per curiam). Disputes about material facts are "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *See Doe v. Edgewood Indep. Sch. Dist.*, 964 F.3d 351, 358 (5th Cir. 2020); *see also Bennett v. Hartford Ins. Co. of Midwest*, 890 F.3d 597, 604 (5th Cir. 2018).

17.     The movant "bears the initial responsibility of . . . demonstrat[ing] the absence of a genuine issue of material fact," *Jones v. United States*, 936 F.3d 318, 321 (5th Cir. 2019) (citation and quotation marks omitted), and can meet this initial burden by "identifying those portions of [the

5

record] which it believes demonstrate the absence of a genuine issue of material fact," *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), or by pointing to the absence of evidence which shifts the burden to the non-movant to demonstrate "by competent summary judgment [evidence] that there is an issue of material fact warranting trial." *Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 301-302 (5th Cir. 2020) (citation and quotation marks omitted).

18.        A plaintiff must allege more than "'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted). Regardless of how well-pleaded the factual allegations may be, they must demonstrate that the plaintiff is entitled to relief under a valid legal theory. *See Neitzke v. Williams,* 490 U.S. 319, 327 (1989); *McCormick v. Stalder,* 105 F.3d 1059, 1061 (5th Cir. 1997).

**B.    Plaintiff's "Color" Claim Fails as a Matter of Law.**

19.    **Failure to Exhaust Administrative Remedies.** Before filing suit, a plaintiff under Title VII of the Civil Rights Act of 1964 must exhaust administrative remedies by filing a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) within 300 days of the unlawful act. 42 U.S.C.S. § 2000e-5(e)(1). *Fairley v. Wal-Mart Stores, Inc.,* 216 F.Supp. 3d. 708, 731, (E.D. Louisiana October 31, 2016). Consequently, in a Title VII lawsuit the Fifth Circuit has limited the trial court's scope of inquiry to "those grounds of a Title VII complaint that were raised in the administrative process." *Anderson v. Lewis Rail Serv. Co.*, 868 F.2d 774, 775 (5th Cir. 1989).

20.    However, courts will also focus on the "scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination." *Donnelly v. Academic Partnerships, LLC,* 2021 WL 462052 at *2 (N.D. Tex. February 9, 2021). In *Donnelly,* the court reasoned that

6

plaintiff's failure to check the "color" box would not preclude her claim if she included facts in her charge concerning color discrimination, but since plaintiff's factual statements made no mention of color discrimination or facts regarding hue or skin color, plaintiff's claims were barred. The fact that an EEOC charge contains separate boxes for each type of discrimination emphasizes that "color and race discrimination are related but distinct forms of discrimination." *Id.*

21.     Here, Plaintiff failed to check the "color" box on both his initial EEOC charge and his amended EEOC charge (Exs. 25 and 26).  He also failed to mention the word color in either, his initial charge or amended charge, and he concluded the amended charge clarifying that his Title VII claim was based on race.  (Ex. 26).  Plaintiff was represented by an attorney in the filing of both the initial EEOC charge and amended EEOC charge, and there can be no claim that Plaintiff was unaware of said administrative requirement.  (Ex. 24, 22:13-25, 23:1-9, 24:24-25, 25:1).  Thus, as Plaintiff's claims of discrimination based on color are outside the scope of his EEOC charge, these claims should be dismissed.

**C.     Plaintiff's §1983 Claims Against Harris County Fail as a Matter of Law**

22.     **Monell Liability.** To impose §1983 liability on Harris County, Plaintiff must prove an underlying constitutional violation plus three additional elements: (1) a policymaker; (2) an official policy; and (3) that the policy was the "moving force" behind the constitutional violation.  *Pena v. City of Rio Grande City*, 879 F.3d 613, 621 (5th Cir. 2018); *see also Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 694 (1978).  Liability must rest on an official policy, meaning the policy of the government, and not the policy of an individual official.  *Bennett v. City of Slidell,* 728 F.2d 762, 769 (5th Cir. 1984).  "[A]ctions of officers or employees of the [government] do not render the [government] liable under §1983 unless they execute official policy."  *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001).  "Consequently, the unconstitutional conduct must be directly attributable to the [government] through some sort of

7

official action or imprimatur, isolated unconstitutional actions by employees [of the government] will almost never trigger liability." *Id.*

23.     For Harris County to be liable based on an official county policy, Plaintiff "must show, among other things, either (1) that the policy itself violated federal law or authorized or directed the deprivation of federal rights or (2) that the policy was adopted or maintained by [County] policymakers 'with deliberate indifference as to its known or obvious consequents…'" *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 309 (5th Cir. 2004). "For an official to act with deliberate indifference, the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Estate of Davis ex rel. McCully v. City of North Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005) (emphasis added). Deliberate indifference is more than mere negligence; it is an intentional choice consciously and maliciously made by the municipality's policymakers. *Conner v. Travis County*, 209 F.3d 794, 796-797 (5th Cir. 2000). "A showing of simple or even heightened negligence will not suffice." *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 407 (1997). Rather, it "must amount to an intentional choice, not merely an unintentionally negligent oversight." *James v. Harris Cty.*, 577 F.3d 612, 617-618 (5th Cir. 2009).

24.     If a plaintiff adduces evidence of an official policy promulgated with deliberate indifference, then the plaintiff must prove that the government's official policy was the "moving force" and actual cause of the deprivation of constitutional rights. *See Piotrowski*, 237 F.3d at 578. "The allegations of [an official county] policy and its relationship to the underlying constitutional violation cannot be conclusory but must contain specific facts." *Prince v. Curry*, 2010 WL 1062611 at *3 (N.D. Tex. 2010); *Ratliff v. Aransas Cty.,* 948 F.3d 281, 285 (5th Cir. 2020) (must do more than describe the incident that gave rise to an injury). A "but for" connection

to the deprivation of rights is not sufficient to satisfy the causation element. *See, e.g. Valle v. City of Houston*, 613 F.3d 536, 546 (5th Cir. 2010) ("…causation must be more than a mere 'but for' coupling between cause and effect).

25.     Here, Plaintiff does not make allegations against Harris County as to any policy he claims was the moving force behind a deprivation of rights other than a broad general assertion that any conduct alleged was custom, policy and practice without the specificity required.  [Doc. #1, ¶52]. As a result, Plaintiff has not pled nor adduced sufficient evidence to subject Harris County to liability under §1983.

26.     First, Plaintiff has failed to plead or adduce "proof that an official policymaker with actual or constructive knowledge of a constitutional violation acted on behalf of Harris County." *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 167 (5th Cir. 2010).  An official policymaker for Harris County is a person who "speaks with final policymaking authority for the [the County] concerning the action alleged to have caused the particular constitutional or statutory violation at issue."  *Bolton v. City of Dallas, Texas*, 541 F.3d 545, 548 (5th Cir. 2008) (internal citation omitted).  Accordingly, Plaintiff has failed to carry his burden and the County is entitled to summary judgment as a matter of law.

27.     Second, Plaintiff's complaint is void of any reference to any official Harris County policy or custom that was the moving force of his alleged injuries.  Plaintiff's failure to identify any County policy or custom amounts to a failure to plead or adduce any facts to demonstrate that he is entitled to relief under §1983. *See Neitzke,* 490 U.S. at 327; *McCormick,* 105 F.3d at 1061. In fact, Plaintiff pleads that the acts for which he complains were the acts of various employees. [Doc. #1, ¶52].  Therefore, liability against Harris County does not attach because Plaintiff has not been injured as the result of an official County policy.

9

28.     Even if Plaintiff has somehow identified a policy or custom authorizing discrimination or retaliation, which Harris County denies, he has not adduced any evidence of deliberate indifference or causation.  Rather, Plaintiff's allegations are limited to the actions of individuals and are silent on any County action or imprimatur.  Harris County cannot be liable for civil rights violations under a theory of *respondeat superior.  See Davidson v. City of Stafford*, 848 F.3d 384, 395 (5th Cir. 2017).  Other than bare allegations or no allegations at all, Plaintiff has failed to produce, and will not be able to produce, any evidence of acts by Harris County that were officially sanctioned or ordered by the County as being the direct cause of his alleged injury.  Plaintiff has thus, failed to carry his burden and Harris County's motion for summary judgment should be granted as a matter of law.

29.     **Due Process.** Additionally, even if Plaintiff met his burden to identify a county policy that caused his injury, his due process claim fails as a matter of law.  Plaintiff failed to plead the basis of his due process claim, so in an abundance of caution, this motion will address both substantive and procedural due process claims.  [Doc. #1, ¶ 58(3)].

30.     To succeed on a claim for violation of substantive due process, the Plaintiff must show "(1) that he had a property interest/right in his employment, and (2) that the public employer's termination of that interest was arbitrary or capricious." *Babin v. Breaux*, 587 Fed. Appx. 105, 112–13 (5th Cir. 2014). Texas is an employment-at-will state and absent any contractual limitations, either party may end an employment relationship at will, with or without cause. *Christian v. City of Dallas,* 64 F. Supp. 2d 617, 624 (N.D. Tex. 1998).  Thus, a property interest can only arise when the statute, rule, contract, or understanding limits an entity's power to terminate a plaintiff only for just cause.  *Id.*  Here, Plaintiff had no contract with Harris County nor is there any statute or rule altering Plaintiff's at-will employment (Exs. 14 and 21).  As such,

Harris County is entitled to summary judgment as a matter of law as to Plaintiff's claim of substantive due process.

31.     Procedural due process entitles a plaintiff who is a public employee with a property right in his employment to notice of the charges against the employee, explanations of the employer's evidence, and an opportunity to present the employee's side of the story. *Cleveland Bd. Of Educ. v.Loudermill,* 470 U.S. 532 (1985).   As stated above, Plaintiff has no property right in his employment as a matter of law.   Even if plaintiff had a property right in his employment, his claim would still fail because Plaintiff was afforded the opportunity to provide a written statement in response to the complaints.   Therefore, Plaintiff was granted due process under the Fourteenth Amendment. *Christian v. City of Dallas,* 64 F. Supp. 2d at 625 (N.D. Tex. 1998)(holding that prior to discharge, the plaintiff was given notice of the complaints against him and the opportunity to respond which satisfied the minimum requirements of the Fourteenth Amendment).   Thus, Plaintiff's procedural due process claim fails as a matter of law.

32.     **Discrimination pursuant to §1983 and §1981.** The Fifth Circuit has held that, "section 1983 and Title VII are 'parallel causes of action.' "*Lauderdale v. Tex. Dep't of Criminal Justice, Institutional Div.*, 512 F.3d 157, 166 (5th Cir. 2007) (quoting *Cervantez v. Bexar Cty. Civil Serv.*, 99 F.3d 730, 734 (5th Cir. 1996)).   This being so, the court has also found that the same reasoning that makes sex-based harassment in the workplace a violation of the Constitution and unlawful under §1983 also applies to race-based discrimination. *Johnson v. Halstead*, 916 F.3d 410, 417 (5th Cir. 2019).   It should also be noted that the court has held that inquiry into intentional discrimination is essentially the same for individual actions brought under sections 1981, 1983, and Title VII. *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996).   Here, Plaintiff pled discrimination under both §1983 and §1981, in addition to Title VII. (Doc. 1 ¶58).   Therefore,

11

because the causes of action under Title VII, §1983, and §1981 claims are essentially the same, the County addresses the analysis further in this motion under the Title VII section to avoid the duplication of the same arguments.  Thus, Defendant's argument and analysis for purposes of this motion under Title VII apply in all respects to Plaintiff's §1983 and §1981 claims.

33.    **Equal Protection.** To state a claim of racial discrimination under the Equal Protection Clause and Section 1983, a plaintiff 'must allege and prove that [she] received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent.  *Price v. Jefferson Cnty.,* 470 F. Supp. 2d 665, 686 (E.D. Tex. 2006).  A discriminatory purpose 'implies that the decision maker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effect on an identifiable group.  *Id.*  Here, Plaintiff has no evidence that he was treated differently from a similarly situated individual and that Harris County had intentions to discriminate against him.  Therefore, his claims under the Equal Protection Clause fail as a matter of law because Plaintiff has no evidence to support his claim.

34.    **Free Speech.** To prevail on a free speech retaliation claim, a public employee must establish that (1) he was not speaking pursuant to official job duties; (2) he was speaking as a citizen on a matter of public concern; (3) his interest in speaking outweighed the employer's interest in workplace efficiency; (4) he suffered an adverse employment action; and (5) the adverse action was substantially motivated by the protected speech.  *See*, *e.g., Burnside v. Kaelin*, 773 F.3d 624, 626 (5th Cir. 2014); *Hurst v. Lee Cnty., Miss.*, 764 F.3d 480, 484 (5th Cir. 2014), cert. denied; 135 S. Ct. 1179 (2015); see also, *Juarez v. Aguilar*, 666 F.3d 325, 332 (5th Cir. 2011).  Here, Whittington claims his speech during the mandatory meeting called by Major Villareal on June 1, 2020, during which the text message following the George Floyd toxicology report was addressed,

resulted in his termination (Ex. 24, 167:23-25, 168:1-7). However, the crux of Whittington's speech during the meeting was the discussion of things that personally offended him, not any matters of public concern. (Ex. 29). In fact, Whittington concluded his comments at the meeting with "from here on out, if something I think that offends me, I'm just going to mention it." Just say, hey man, you know what, I feel offended by that." (Ex. 27, 42:6-19).

35. In *Garcetti v. Ceballos,* 547 U.S. 410, 126 S. Ct. 1951 (2006), the Supreme Court held that speech by a public employee made "pursuant to official duties" is not constitutionally protected – no matter how great its social significance. In determining whether a plaintiff spoke primarily as a citizen on a matter of public concern or as an employee on a matter of personal interest, the court will consider "the content, form, and context of a given statement, as revealed by the whole record." *See*, *Connick v. Myers*, 461 U.S. 138, 147-48 (1983); *Fiesel v. Cherry,* 294 F.3d 664, 668 (5th Cir.2002). These factors "must be considered as a whole package, and [their] significance ... will differ depending on the circumstances of the particular situation." *Moore v. City of Kilgore,* 877 F.2d 364, 370 (5th Cir.1989). The Fifth Circuit has noted that speech regarding "internal personnel disputes and working conditions" will not ordinarily be a matter of public concern. *See Alexander v. Eeds,* 392 F.3d 138, 142 (5th Cir.2004). Here, Whittington was attending a mandatory work meeting called by Major Villareal. When Whittington was asked what he hoped would be accomplished at the meeting, he stated that he had no expectations, and that his opinions went in one ear and out the other of his co-workers because he felt that his co-workers downplayed his feelings. (Ex. 24, 60:9-20). It is clear, that Whittington's speech during the meeting concerned his own personal feelings.

36. In *Charles v. Grieff,* the court held that it was distinguishable from the *Garcetti* case and therefore considered protected speech because the plaintiff's decision to go outside of the chain of

13

command and communicate the speech externally was significant to show it was of public concern and not as employee. *Charles v. Grieff,* 522 F.3d 508 (5th Cir. 2008). Here, in the text message that prompted the meeting Whittington claims as the basis of his free speech claim he urged "no Maj!! U should be apart!!" in response to Major Villareal's reluctance at his inclusion on the group text; thus, refusing to go outside of his chain of command. (Ex. 28). During the meeting, Whittington's speech contained issues personal to him at the workplace. He complained "Every time has been an incident, or it has been a shooting. . . . Whether it's right, wrong, indifferent, who was in the wrong – where I come from, we don't talk about stuff like that. We never talked about stuff like that. That and politics." (Ex. 27, 7:2-7). Most important, Major Villareal, guided the meeting and made clear that the extent of the meeting was to discuss the group text within the department. (Ex. 28). Specifically, Major Villareal stated "we're not going to discuss the events that happened in Minnesota. We "were going to discuss what happened on the text." (Ex. 27, 8:23-25). If the meeting deviated, Major Villareal redirected the meeting. He repeated "like I said, we're not going to discuss what happened out there. I'm more concerned about what happens here." (Ex. 27, 20:22-24). The meeting was brought by Major Villareal, not by Whittington. (Ex. 27, 4:2-3; Ex. 28). Whittington never sought to speak on these issues outside of the chain of command, or to discuss such issues across any other mediums that he claims resulted in retaliation. He was simply attending Major Villareal's mandatory meeting. Such speech simply fails as protected speech.

37.     Even if Whittington's speech was considered of public concern, such speech is not automatically protected. When a public employee speaks on a matter of public concern, speech is not protected unless the employee's interest in expression outweighs the government's interest in promoting efficiency. *See Connick v. Myers*, 461 U.S. at 147 (1983). In weighing the competing

14

interests of the employee and employer, the court considers: (1) the degree to which the employee's activity involved a matter of public concern; (2) the time, place, and manner of the employee's activity; (3) whether close working relationships are essential to fulfilling the employee's public responsibilities and the potential effect of the employee's activity on those relationships; (4) whether the employee's activity may be characterized as hostile, abusive, or insubordinate; and (5) whether the activity impairs discipline by superiors or harmony among coworkers. *See Jordan v. Ector County,* 516 F.3d 290, 299 (5th Cir.2008). Here, the speech was communicated during a mandatory meeting called by Major Villareal at the offices of Harris County Constable Precinct 3. Close working relationships between the deputies are essential to keep the officers safe. (Ex. 29). During the meeting, the importance of close working relationships was expressed by one attendee who stated, "all we have is each other, man." (Ex. 27, 23-24). Whittington's speech concerned another attendee as to the harmony of each other's relationship who stated to Whittington, "If something bothers y'all talk about it. I want you around. I don't want you to not come here." (Ex. 27, 43:16-19). Further, Major Villareal made it clear that his intent in guiding and steering the meeting in a way that focused on the inner workings of the department was to ensure members of his department felt heard and validated. (Ex. 27, 29:1-8). Harris County's interests in promoting efficiency clearly outweigh Whittington's interest in his speech. Therefore, Whittington's speech lacks the required elements to enjoy protection under the First Amendment.

38.　　Further, Whittington offers no evidence that his termination decision was motivated by his speech during the June 1, 2020 meeting. The events that ultimately resulted in termination, the May 28, 2020, dog bite and drug security concern occurred prior to the June 1, 2020 meeting and Whittington offers no evidence that any decision maker in his termination had knowledge of his speech. Moreover, Chief Kirk Bonsal, each person on ADC, and Constable Eagleton - all indicate

15

that they had no knowledge of Whittington's speech during the June 1, 2020 meeting.  (Exs. 14, 15, 16, 17, 18, 19, 21).

39.     **Texas Constitution Claims.** Plaintiff has pled 3 Texas state constitutional provisions, equal rights, equality, and free speech pursuant to §1983 (Doc. 1 ¶ 58(6)-(8)) which provides for a cause of action under the United States Constitution and federal statutes.

40.     "Texas has no provision comparable to §1983." *City of Beaumont v. Bouillion*, 896 S.W.2d 143, 147 (Tex. 1995). Also, Texas does not recognize constitutional torts under its state constitution.  *Bouillion*, 896 S.W.2d at 144-150; *City of Arlington v. Randall*, 301 S.W.3d 896, 906-909 (Tex. App.-Fort Worth 2009, pet. denied).  As a result, there is "no private cause of action for money damages against a governmental entity for violations of the Texas Constitution."  *Bouillion*, 896 S.W.2d at 147; *Univ. of Tex. Sys. v. Courtney*, 946 S.W.2d 464, 468-69, 471 (Tex.App.- Fort Worth 1997, writ denied).  Therefore, Plaintiff has failed to state claims under the Texas Constitution for which relief can be granted against Harris County and such claims must be dismissed as a matter of law.

41.     **Texas Penal Code Claims.** Plaintiff further pled a §1983 claim pursuant to two violations of the Texas Penal Code (Doc. 1 ¶ 58(9)-(10)).  A cause of action fails as a matter of law if it is brought pursuant to a state statute that does not create a private right of action.  *See McCaig v. Wells Fargo Bank (Tex.), N.A.*, 788 F.3d 463, 473–74 (5th Cir. 2015).  If a statute does not expressly create a private right of action, one may be implied only when the "legislative intent to do so appears in the statute as written."  *Brown v. De La Cruz*, 156 S.W.3d 560, 567 (Tex. 2004); *Conn. Gen. Life Ins. Co. v. Humble Surgical Hosp., LLC*, CIVIL ACTION NO. 4:13-CV-3291, 2016 WL 3077405, at *16 (S.D. Tex. June 1, 2016) (Hoyt, J.) ("Legislative intent gives rise to a private cause of action only when legislative intent is manifestly clear.").

42.    Federal courts rarely imply rights of action from criminal statutes. *See Leal v. Hidalgo Cnty.*, CIVIL NO. M-07-272, 2008 WL 11391657, at *2 (S.D. Tex. Apr. 23, 2008).  And federal courts are especially "hesitant to imply rights of action from state criminal statutes" when there is no "guidance from state courts." *See In re Integrated Res., Inc. Real Estate Ltd. P'ships* Sec. Litig.,851 F. Supp. 556, 564 (S.D.N.Y. 1994) (*citing Agresta v. Goode*, 797 F. Supp. 399, 409 (E.D. Pa. 1992); *Agnew v. City of Bryan*, No. CIV.A. H-84-4407, 1986 WL 15158, at *1 (S.D. Tex. Dec. 23, 1986)).  Therefore, Plaintiff has failed to state claims under the Texas Penal Code for which relief can be granted against Harris County and such claims must be dismissed as a matter of law.

43.    **Texas Labor Code "Blacklisting."** Nothing in the statutory language or legislative history of § 52.031 of the Texas Labor Code clearly suggests that the legislature intended to create a private cause of action.  Section 52.031 does not create a private cause of action. *Chandler v. Pilgrim's Pride Corp.,* No. 9:20-CV-78-MJT, 2021 WL 2946436, at *5 (E.D. Tex. July 14, 2021), appeal dismissed, No. 21-40603, 2022 WL 3443651 (5th Cir. Feb. 16, 2022).  No Texas court has decided § 52.031 provides for a private cause of action. *See Brim v. ExxonMobil Pipeline Co.*, 213 Fed.Appx. 303, 305 (5th Cir. 2007); *Ragsdale v. Classroom Teachers of Dallas*, No. CIV.A.3:06CV863-H(BH), 2007 WL 426502, at *7 (N.D. Tex. Feb. 5, 2007).  Thus, as there is no private cause of action under Texas Labor Code § 52.031, Plaintiff's claim fails as a matter of law.

**D.    Plaintiff's Title VII Claims Against Harris County Fails as a Matter of Law.**

44.    **Discrimination.** When, as in this case, a plaintiff attempts to prove allegations of discrimination through indirect or circumstantial evidence, the claims are considered under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), as modified in *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003), and *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305 (5th Cir. 2004).

17

45. To survive summary judgment on a claim of discrimination, a plaintiff must first establish a *prima facie* case by showing: (1) he is a member of a protected group; (2) he was qualified for the position at issue; (3) he suffered an adverse employment action; and (4) he was treated less favorably than those outside the protected class or replaced by someone outside the protected class. *See Frank v. Xerox Corp.*, 347 F.3d 130, 137 (5th Cir. 2003); *Abarca v. Metro. Transit Auth., 404 F.3d 938, 941 (5th Cir. 2005)*.

46. If a plaintiff makes prima facie showing, a rebuttable presumption of discrimination arises, and the burden shifts to the defendant to articulate a "legitimate, nondiscriminatory reason" for the adverse employment decision. *Culwell v. City of Fort Worth*, 468 F.3d 868, 873 (5th Cir. 2006). If a defendant produces such evidence, the presumption of discrimination dissolves. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142–43 (2000); *Price v. Fed. Express Corp.*, 283 F.3d 715,720 (5th Cir. 2002).

47. In this case, Harris County has proffered legitimate business reasons. (Ex. 22) Whittington not only committed repeated policy violations but some violations were significant enough to warrant immediate termination. (Ex. 22, p. 2).

48. **Hostile Work Environment.** A hostile work environment exists "when the workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Vallecillo v. U.S. Dep't of Hous. & Urb. Dev.*, 155 F. App'x 764, 766 (5th Cir. 2005). To establish a prima facie case of a race-based hostile work environment, the plaintiff must prove: (1) he belongs to a protected class; (2) he was subjected to unwelcome harassment; (3) the harassment complained of was based on race/color; (4) the harassment complained of affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of

18

the harassment in question and failed to take prompt remedial action. *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002).

49.     Succeeding on a claim of hostile work environment requires that the environment be, "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim did perceive as so." *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 114 S. Ct. 367, 368, 126 L. Ed. 2d 295 (1993).  The mere utterance of an offensive comment which provokes offensive feelings in an employee is not sufficient evidence of a hostile work environment.  *Id*., at 21, 114 S.Ct. 367. "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher v. City of Boca Raton,* 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998)(internal quotation marks omitted); *Vallecillo v. U.S. Dep't of Hous. & Urb. Dev.*, 155 F. App'x 764, 767 (5th Cir. 2005).

50.     In this case, Whittington claims that he was subjected to a hostile work environment because he was greatly offended by the issues related to officer involved shootings with African Americans, the incident with George Floyd, and politics.[2]  (Ex. 24, 84:18-25, 85:1-5).  And while he claims offensive comments were made and that "Sergeant Barringer was the biggest ringleader" (Ex. 24, 44:6-7), he admits Sergeant Barringer "didn't make specific statements about race."  (*Id*., 45:2-3).  Further, Whittington claims that the most offensive text he received was the text that was exchanged following the toxicology report of George Floyd.  (Ex. 24, 56:23-25, 57:1-2, Ex. 28).

---

[2] A claimant must file a Title VII discrimination claim with the EEOC within 300 days of the challenged discrimination. *Frank v. Xerox Corp.*, 347 F.3d 130, 136 (5th Cir. 2003).  Whittington filed his EEOC charge on June 2, 2021.  As such, all allegations that occurred prior to this date are time-barred. *Id*.

However, nothing in that text exchange targets Whittington or harasses Whittington on the basis of race. (Ex. 28). Whittington provides no evidence of a hostile work environment.

51.   Not only is Whittington's claim void of the harassment necessary to serve as the basis of his hostile work environment claim, but his claim is void of any evidence that the statements Whittington found offensive altered the terms and conditions of his employment. For these reasons, Whittington cannot establish a claim of hostile work environment.

52.   **Retaliation.** To establish a prima facie case of retaliation, Plaintiff must show: (1) he engaged in protected activity; (2) an adverse employment action occurred; and (3) a causal link existed between the protected activity and adverse action. *Turner v. Baylor Richardson Med. Ctr.,* 476 F.3d 337, 348 (5th Cir. 2007). Whittington cannot show that he engaged in a protected activity or that a causal link existed between the protected activity and the adverse action.

53.   Title VII prohibits retaliation "because [a plaintiff] has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3. This is known as the "opposition clause." *See, e.g. Douglas v. DynMcDermott Petroleum Operations Co.*, 144 F.3d 364, 372-73 (5th Cir. 1998). To trigger the protections of the opposition clause, Plaintiff must establish that he opposed an unlawful employment practice and that he had an "objectively reasonable belief" that the opposed employment practice was unlawful. *See Armstrong v. K&B Louisiana Corp.*, 488 F. App'x 779, 781-82 (5th Cir. 2012) (citing *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 428 (5th Cir. 2000)). Plaintiff cannot establish either element.

54.   The Fifth Circuit has held that "a vague complaint, without any reference to an unlawful employment practice under Title VII, does not constitute protected activity." *Davis v. Dallas Indep. Sch. Dist.*, 448 Fed.Appx. 485, 493 (5th Cir. 2011). In this case, Whittington never complained of any discriminatory employment practices. (Ex. 24, 82:11-17). The only time

Whittington claims to have complained was following a group text regarding the toxicology report of George Floyd. (Ex. 24, 57:4-10). However, such text is void of a complaint of specific employment discrimination. (Ex. 28). Similarly, in the meeting following the group text that Whittington claims to have lodged a group complaint, Whittington was asked what topic he was referring to in the group text that prompted the meeting, and his only response was "well it's not a particular topic." (Ex. 27 6:11-20). During that meeting, Whittington was asked what issues concerned him and his only response was that the thing that "stuck with" him was during the "Black Lives Matter movement," a statement that "all lives matter" was made. (Ex. 27, 11:1-4). He further stated that he could not talk about specific issues. For example, during the meeting he stated "I can't sit there and say "oh, on this date, on this date . . . ", "the only thing that I do remember that came out when we was upstairs, when the Black Lives Matter thing happened. And that thing just—just went to my core. Yeah, everybody's lives matter." (Ex. 27, 22:2-10).

55.     In *Turner v. Baylor Richardson,* Plaintiff complained of her supervisor's use of the term "ghetto children" when referring to inner city youth. The court held that Plaintiff could not have reasonably believed that the statement in and of itself constituted an unlawful employment practice and therefore her complaint about the statement did not constitute a protected activity. *Turner v. Baylor Richardson Med. Ctr.*476 F.3d at 349. (5th Cir. 2007). Similarly, while the term "all lives matter" may be subjectively offensive to some in the context of the Black Lives Matter movement, such statement does not in any way constitute an unlawful employment practice, and the complaint about such statement does not stretch to a protected activity. Thus, as Whittington did not engage in a protected activity, his claim fails.

56.     To establish the causation prong of a *prima facie* case of retaliation, Plaintiff must show the decision maker (i.e., Constable Sherman Eagleton and members of the Administrative

21

Disciplinary Committee) knew about Plaintiff's allegedly protected actions. *See Clark County School Dist.v Breeden,* 532 U.S. 268, 273 (2001); *Manning v. Chevron Chem. Co.,* 332 F.3d 874, 883 (5th Cir. 2003). "If an employer is unaware of an employee's protected conduct at the time of the adverse employment action, the employer plainly could not have retaliated against the employee based on that conduct." *Chaney v. New Orleans Pub. Facility Mgmt., Inc.,* 179 F.3d 164, 168 (5th Cir. 1999). Therefore, courts have repeatedly held that plaintiffs alleging retaliation failed to establish a prima facie case where there was no evidence that the relevant decision maker knew of the plaintiff's allegedly protected conduct. *See McDowell v. Home Depot, U.S.A.,* No. Civ. A 3:02-CV-1294-D, 2004 WL 594101, at *9-10 (N.D. Tex. Mar. 9, 2004) (holding that plaintiff failed to establish a prima facie case of retaliation where there was no evidence that the decision makers knew of plaintiff's protected activities). Constable Eagleton, who was the final decision maker as to Whittington's termination, had no knowledge of any prior protected activity at the time he made his decision to accept the recommendations of ADC and terminate Whittington's employment, or at the time of his decision to uphold the termination. (Ex. 21). Indeed, Whittington testified that Constable Eagleton did not know of anything "going on" and "wasn't in the know." (Ex. 24, 166:1-4). Similarly, no member of the ADC knew about a meeting of the Crime Interdiction Unit following George Floyd's toxicology reports when they voted to terminate Whittington. (Exs. 15, 16, 17, 18, 19). Thus, Plaintiff's retaliation claim fails for this reason too.

## VI.        CONCLUSION

For the reasons stated herein, there is no genuine issue of material fact as to any of Plaintiff's causes of action against Harris County. Harris County is therefore entitled to summary judgment as a matter of law.

Defendant HARRIS COUNTY prays that the Court grant its motion for summary judgment

as to all of Plaintiff's claims with prejudice, enter a final judgment of dismissal, and for all other

relief to which this defendant is justly entitled.

Respectfully Submitted,

OF COUNSEL:
CHRISTIAN D. MENEFEE
TEXAS BAR NO. 24088049
HARRIS COUNTY ATTORNEY

By:    */s/ Melissa G. Martin*
MELISSA G. MARTIN
Senior Assistant County Attorney
Attorney-In-Charge
State Bar No. 24039035
Fed. Bar No. 38613
Tel: (713) 274-5354 (direct)
melissa.martin@harriscountytx.gov

SUSANA G. SOSA
Senior Assistant County Attorney
State Bar No. 24083894
Fed. Bar No. 2292237
Tel: (713) 274-5158 (direct)
susana.sosa@harriscountytx.gov

1019 Congress
Houston, Texas 77002
Fax: (713) 755-8823

ATTORNEYS FOR DEFENDANT
HARRIS COUNTY

## CERTIFICATE OF SERVICE

I certify that, pursuant to Federal Rules of Civil Procedure, a copy of the instrument to which this certificate is attached was served on Plaintiff on December 15, 2022.

*/s/ Melissa G. Martin*
Melissa G. Martin

23