

HARRIS COUNTY
OFFICE OF THE CONSTABLE
PRECINCT 3

## OFFICE OF PROFESSIONAL STANDARDS
## INTERNAL AFFAIRS DIVISION

## CONFIDENTIAL

## INVESTIGATIVE REPORT

Date:                     July 28, 2020

OPS Control #             2020-IAD-004

Subject of Complaint:     Deputy B. Whittington

Employee#                 C30417

Alleged Violations:       503.4   Use of Force and K9 Bite Procedures
                          200.2   Response to Resistance Policy
                          507.7   Report Completion
                          402.2.2 Report Writing

## INTRODUCTION

On July 28, 2020, I, Deputy, Paul Simpson with the Office of Professional Standards/Internal Affairs Division, was directed by Chief Kirk Bonsal to review reports submitted by supervisors of Deputy B. Whittington and provide the findings to his office. The complaint stems from a foot pursuit by Deputy Whittington and K9 Zane on May 28, 2020. Deputy Whittington and K9 Zane assisted Deputy A. Watson, who notified dispatch she was pursuing two subjects.

Deputy Wittington left the Dell Dale office to provide backup and assistance for Deputy Watson. According to Deputy Whittington's K9 deployment supplement, the following occurred. He arrived in the area when he heard radio communication from Sergeant Barringer, giving the suspects location along the railroad tracks near 409 E. Wallisville road. Upon his arrival, he states he made eye contact with suspect Marcos Garcia, who then began running down the tracks. Deputy Whittington coming to a stop then deployed K9 Zane, and as he reached the tracks, Deputy Whittington gave K9 Zane the command to engage the suspect.

1

HC - 0001

Deputy Whittington, in his report, states that he saw the suspect turn, look back, and raise his hands. At this time, he attempted to recall K9 Zane, who had already reached the suspect. Deputy Whittington arrived at K9 Zane, and the suspect a short time later and gave the command to release from the suspect.

The suspect asks Deputy Whittington why he let the dog bite him. He (suspect) stated, "I gave up."

During the body cam video, I hear Deputy Whittington tell suspect, Marcos Garcia, "if you would have stopped when I saw you, but you took off running. I popped the door and let the dog out, then you turned around and said I give up, but it's too late now the dogs on his way." While monitoring suspect M. Garcia, Deputy Whittington, comments to Garcia that "it wasn't that bad that K9 Zane is a young puppy, and he doesn't understand yet. That this is a young puppy, he doesn't know what he's doing."

On August 6, 2020, I reviewed the dashcam video taken from Deputy Whittington's patrol unit. Deputy Whittington began giving commands to K-9 Zane as they pursued suspect Garcia. At 15:49:55, Deputy Whittington located the suspect running on the railroad tracks. At 15:50:04, Deputy Whittington opened the door for K-9 Zane and began giving the command of "**Packen**" (bite) 2 times to K-9 Zane. At 15:50:08, he gives the command of "**Hier**" (call off) six times to K-9 Zane. At 15:50:21, it is apparent from the video that K-9 Zane continued with his engagement of the suspect. At 15:50:35 Deputy Whittington gives the command of "**Af/Liggen**" (down/let go) to K-9 Zane six times before K-9 Zane released the suspect at 15:50:40. The canine had physically engage the suspect. Based on what you could hear on the video Deputy Whittington then gave Garcia several orders to turn over before he was handcuffed and placed under arrest by Sergeant Barrington.

On August 10, 2020, Deputy Skero retrieved surveillance video from Plastipak Packaging Inc. located at 222 Kerry Street. I received and reviewed it on August 11, 2020; the video is very grainy and has no sound. However, it supports the fact that suspect M. Garcia was fleeing when Deputy Whittington drove up. It further reveals Deputy Whittington was deploying K-9 Zane and K-9 Zane, increasing the distance between Deputy Whittington to apprehend suspect Garcia.

The NNDDA "National Narcotic Detector Dog Association" states the canine will be required to hold and fight the suspect. Failure to engage the suspect will be a cause for failure. The canine must apprehend the suspect and hold until the approach of the handler. During the Recall/Minimum Force training, it stresses the importance of this test is that the canine will not have contact with the suspect. However, incidental or non-aggressive contact is not a failure, but it is not acceptable if the suspect is bitten or mouthed. In all apprehensions, the canine must demonstrate the ability to release on a verbal command without contact between the handler and canine.

According to Deputy Skero, a Harris County Pct. 3 K-9 handler, it is not common for an actively engaged K-9 to listen to the command to stop biting once engaged due to stress, anxiety, and adrenaline; therefore isn't generally frowned upon.

2

HC - 0002

I followed up with Sergeant Chris Moore of the Harris County Sheriff's Department. Sergeant Moore is a part of the K-9 training program with his agency and assists in training of the K-9's and handlers for Precinct 3. I asked Sergeant Moore about police K-9's stress level when deployed to apprehend a suspect. His response was basically that K-9's are some ways just like people, and all react differently. I also asked Sergeant about the difficulty recalling a K-9 once they have engaged a suspect. He responded that they are required to respond to verbal commands without being handled.

After reviewing the Response to Resistance paperwork associated with Deputy Whittington and K-9 Zane's incident on May 28, 2020, Sergeant T. Barringer noted in his comments that there was no body-worn camera footage. Sergeant Barringer also checked the box indicating Further Investigation Needed and forwarded it to the training coordinator Captain H. Elkins.

On July 27, 2020, Captain H. Elkins reviewed the Response to Resistance file for case HC#2005-00432, involving K-9 handler B. Whittington and K-9 Zane. During the review, Captain Elkins identified several issues regarding their training as a police K-9 handler and a police K-9.

His first issue is Deputy Whittington's failure to active his Body Worn Camera. Deputy Wittington has failed to follow policy and training procedures and has been disciplined for it in the past.

The second issue noted by Captain Elkins is for patrol K-9 certification standards. According to certification standards for a Patrol K-9, the K-9 must respond when "recalled" at any point during deployment, especially when off-leash. The K-9 must respond to hand and voice commands when off lease. If it does not, this is a training issue with the dog.

The third issue pointed out by Captain Elkins is Deputy Whittington's failure to complete all of his paperwork on time or complete the paperwork correctly. At the time noted during his review, he mentioned that it had been 60 days since the May 28 incident, and Deputy Whittington has not entered a supplement report into Superion. He is noting that this is not a training issue but a violation of the Precinct 3 policy.

## STATEMENTS

See attached Statements from all involved parties;

Deputy Amanda Watson
Initiating Officer

Summary Statement
Deputy Watson, While on patrol in the Highlands community of Harris County, Texas, Deputy Watson observed a white Ford F250 without license plates, occupied by two male subjects. Deputy Watson attempted to conduct a traffic stop for the violation, but the driver increased speed, cutting across a parking lot in an attempt to flee. Deputy Watson located the vehicle and occupants a short time later, but the passenger began fleeing. At that time, she placed the driver under arrest and advised communications of the fleeing

3

HC - 0003

Hispanic male subject. She states she had no visual of the second subject or his interaction with Deputy Whittington or K9 Zane.

Deputy Adrian Celis
Responding Deputy

Summary Statement
Deputy Celis responded to the scene to assist Deputy Watson. Deputy Celis began a search of the immediate area for the passenger that had fled on foot. He was later flagged down by a citizen and informed that the suspect was possibly behind the SubWay near F.M. 2100 and E San Jacinto. He then heard Deputy Whittington advised that he had located the suspect at the end of Cherry Street and had deployed K9 with a dog bite. Deputy Celis states that upon his arrival and other Deputies and supervisors, the suspect was already in custody. At that time, he returned to Deputy Watson's location.

Sergeant Troy Barringer
Responding Sergeant

Summary Statement
Sergeant Barringer arrived in the area minutes later observed a subject matching the description walking east on the railroad tracks. He broadcasted this information to other units. A short time later, Sergeant Barringer arrived at Deputy Whittington's location and observed Deputy Whittington holding K-9 Zane by leash and suspect Garcia lying on the ground. He then placed handcuffs on Garcia.

Assistant Chief Larkin
Responding Supervisor

Summary Statement
Assist Chief Larkin was in the area when Deputy Watson notified Communications she was in pursuit. Chief Larkin responded to Deputy Watson's location to assist, but both suspects were already in custody. He states that Deputy Whittington arrived at Deputy Watson's location approximately 10 minutes afterward with the second suspect who wasn't cooperative and complaining about being bitten by the K-9. He advised that the suspect stated he had given up, and the dog still bit him.

Marcos Garcia
Suspect

Summary Statement
On August 12, 2020. I interviewed Marcos Garcia about the IAD investigation stemming from an incident on May 28, 2020. During the interview, I reviewed the Dashcam and Bodycam footage of the event with him and his mother.

4

HC - 0004

I asked him why he decided to flee from Deputy Watson; his response was he didn't want to get caught. When asked about other events that occurred on that day, Garcia seemed to have some difficulty recalling many details from memory. When he saw Deputy Whittington coming towards him again, he began to flee. While running down the railroad tracks, Garcia looked over his shoulder and saw K-9 Zane and Deputy Whittington exiting the patrol unit. They continued to pursue Garcia down the railroad tracks. A second time Garcia stated that he turned and saw K-9 Zane, so he decided to stop, and he estimates the distance to be around 15 to 20 yards when he turned around and raised his hands to surrender.

<u>Deputy Bert Whittington</u>
Responding K-9 Deputy

Summary Statement
On August 18, 2020. I interviewed Deputy Bert Whittington about the IAD investigation stemming from an incident on May 28, 2020. During the interview, I reviewed the Dashcam, Bodycam footage, and had him read a report that he submitted about the event.

After reading his report, I asked Deputy Whittington, to explain to me the statements he made about it being "too late the dog was already on his way." He replies that he was paraphrasing during his conversation with the suspect. Deputy Whittington states that K-9 Zane, was within feet of the suspect when he looked back and then turned, raising his hands to surrender.

I asked Deputy Whittington how far away was K-9 Zane when the suspect surrendered? According to Deputy Whittington, K-9 Zane was approximately 5 feet from the suspect when he lunged for the suspect's arms. But the suspect stopped raised his arms, and K-9 Zane passes him. Deputy Whittington stated that he was calling K-9 Zane off, but K-9 Zane then turned and reengaged the suspect as Deputy Whittington reaches them. He says that he called K-9 Zane off several times, and when Zane did not respond and let go, he had to physically use the coke chain with verbal commands to get him to release.

I asked Deputy Whittington why his body cam wasn't on when he exited the unit, and is there a reason for that? Deputy Whittington gave several reasons why he didn't turn on his body cam, but none were valid reasons why he should forget to activate it. He mentions when he is in a high-stress situation as reasons for forgetting to turn it on.

I asked Deputy Whittington if he had any Dashcam or Bodycam video for K-9 Zeno or K-9 Zane. Deputy Whittington couldn't recall any video for K-9 Zeno and stated "no" to video for K-9 Zane, but offered different reasons for not having any.

I asked Deputy Whittington about his commands used for K-9 Zane. Deputy Whittington stated that he uses "Packen" as the bite command, and his recall command is "Zane here," Zane's release or off command is "oust" along with physically pulling him away using his choke chain. When K-9 Zane is committed or has identified a target, I give him the

5

HC – 0005

command to engage. When asked if K-9 Zane, once deployed, can be verbally recalled? Deputy Whittington's response is they are still working on verbal recall.

## INVESTIGATIVE SUMMARY

After review of Harris County Constable C3, Incident/Investigation Report, Response to Resistance Report# 2005-00432, communications logs, dashcam video, body cam video and video from . Captain Henry Elkins and Lieutenant Jimmy Evans, who is the use of force compliance officers who reviewed the file and found that it was not in compliance. Which prompted an investigation into the training issues with Deputy Whittington and K-9 Zane,

## FACTS REVEALED

Deputy Whittington arrived in the area when he heard radio communication from Sergeant Barringer, giving the suspect's location. Upon his arrival, he states he made eye contact with suspect Marcos Garcia, who then began fleeing from Deputy Whittington. The bodycam and dashcam videos show a suspect matching the description given by Deputy Watson. Deputy Whittington then deployed K9 Zane and gave him the German command of "Packen." As they continued to pursue suspect Garcia on the railroad tracks, Garcia claims he stops and gives up by holding his hands up. Deputy Whittington can be heard on his dashcam video yelling "Hier" 6 times to K-9 Zane, the recall command. Shortly afterward, you can further hear Deputy Whittington yelling the command of "Af/Liggen" 6 times to K-9 Zane, which is again the command for Down/Let go. The body cam video does not reveal this because Deputy Whittington failed to activate it; however, Deputy Whittington's patrol unit recorded his attempts to disengage K-9 Zane.

## CONCLUSION

The facts, evidence, interviews, and available video footage support the conclusion that Deputy Whittington may have violated the use of force or response to resistance policy by allowing his K-9 to engage the suspect biting him after he gave up. This is supported by the statement of Garcia and by Deputy Whittington's comment on the video when the suspect stated he surrendered.

Whittington states, "it was too late, the dog was on his way." Additionally, he had to give multiple recall commands because the K-9 did not respond or release when recalled as the certification requires.

This investigator offers no opinion as to the disposition of this complaint. In the event, new evidence or information becomes available, this investigator reserves the right to change or modify the content of this report.

HC – 0006

Inv. Paul J Simpson Sr.
Internal Affairs Division
Office of Professional Standards

HC – 0007

ATTACHMENTS:

Harris County Constable C3- Incident Report# 2005-00432
Harris County Constable C3-Internal Affairs Complaint
Statement-Deputy Amanda Watson
Statement-Deputy Adrian Celis
Statement-Corporal Bryan Skero
Statement-Sergeant Troy Barringer
Statement-Lieutenant Greg Board
Statement-Assist Chief Ricky Larkin
Response to Resistance Review-Captain Henry Elkins
Response to Resistance Memo-Captain Henry Elkins
Response to Resistance Memo-Lieutenant Jimmy Evans
Use of Force Memo-Deputy Bert Whittington