United States District Court
Southern District of Texas

**ENTERED**
September 28, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BERT W. WHITTINGTON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:21-CV-03220 |
| | § | |
| KIRK WAYNE BONSAL, JR., *et al.*, | § | |
| | § | |
| Defendants. | § | |

## ORDER

Before the Court are Defendant Harris County's Motion for Summary Judgment (Doc. #28), Plaintiff Bert Whittington's Response (Doc. #30), Defendant Harris County's Reply (Doc. #31), Plaintiff's Request for Submission or Oral Hearing (Doc. #40), and Defendant Harris County's Response (Doc. #41).[1] Having reviewed the parties' submissions, arguments, and the applicable legal authority, the Court grants Defendant Harris County's Motion for Summary Judgment (Doc. #28) and denies Plaintiff's Request for Submission or Oral Hearing (Doc. #40) as moot.

### I.    Background

#### a.    Factual Background

Plaintiff Bert Whittington, an African American man, was hired to work for Harris County Constable Precinct 3 on or about January 30, 2017. Doc. #1 ¶ 20. Shortly thereafter, he

---

[1] Also before the Court are Defendant Harris County's Motion to Strike Evidence in Plaintiff's Response to Defendant's Motion for Summary Judgment (Doc. #33) and Plaintiff's Response (Doc. #34). Harris County's Motion to Strike is DENIED. The deposed witnesses are allowed to testify to their personal knowledge. Credibility and veracity are factors to be determined at trial.

was assigned as a police canine handler in the Crime Interdiction Unit ("CIU"). *Id.* Plaintiff was trained, certified, and approved in accordance with the requirements of the Constable's Office and the National Narcotic Detector Dog Association ("NNDDA") which included a minimum of 360 hours of handler training. Doc. #30, Ex. 4. Following the illness of his first K9, Plaintiff obtained his second K9, Zane, in July 2019. Doc. #28, Ex. 1.

From December 10, 2019, to May 28, 2020, Zane mistakenly bit inappropriate parties on three different occasions while being handled by Plaintiff. Doc. #28, Ex. 5, Ex. 6., Ex. 10. The level of fault for each bite is in dispute, but the general facts are not. During the first instance in December 2019, Zane bit a fellow deputy constable during an active pursuit of a suspect. Doc. #28, Ex. 5. During the second instance in January 2020, Zane bit a fellow deputy constable and a citizen bystander during an active pursuit of a suspect. Doc. #28, Ex. 6, Ex. 7. During the second instance, Plaintiff's body-worn camera was not activated as required by agency policy. During the third and final instance on May 28, 2020, Zane attacked a juvenile suspect who had already surrendered. Also on May 28, Plaintiff arrested an individual who was in possession of several narcotics, including 14.8 grams of cocaine. Doc. #28, Ex. 12 at 1. Several days after Plaintiff's confiscation of the evidence, the cocaine was discovered missing by the medical examiner's office. *Id.* at 14. An internal investigation was conducted.

The investigators for the third bite case and the missing evidence case determined that Plaintiff committed policy violations. The findings for both investigations were then referred to the Administrative Disciplinary Committee ("ADC"), a body of supervisory employees with Harris County Constable Precinct 3 charged with making disciplinary recommendations to the Constable, for review. Doc. #28, Ex. 10, Ex. 12, Ex. 16. The ADC was chaired by non-voting member and Chief Deputy Kirk Bonsal, and included Bryan Howard (African American male),

2

Herman Sanders (African American male), Jeff Gonzales (Hispanic male), Margaret Magana (Hispanic female), and Patrick Sullivan (Caucasian male) as voting members. Doc. #28, Ex. 16, Ex. 22. Four out of five ADC members voted to terminate Plaintiff. Doc. #28, Ex. 22. Constable Sherman Eagleton (African American male), the final decision maker on termination and disciplinary decisions, reviewed the ADC's recommendation and elected to terminate Plaintiff on August 28, 2020. Doc. #28, Ex. 23, Ex. 24. Plaintiff appealed, and Eagleton upheld the terminations on September 23, 2020. Doc. #28, Ex. 25.

On or about September 21, 2020, Plaintiff filed a pre-charge inquiry with the Equal Employment Opportunity Commission ("EEOC") on the grounds of wrongful termination. Doc. #1 ¶ 13. On or about June 7, 2021, Plaintiff timely filed a formal charge with the EEOC against Chief Deputy Bonsal, Jr., Constable Eagleton, Major Isaac Villareal, Master Sergeant Troy Barringer (collectively, the "Individual Defendants"), and Defendant Harris County on the grounds of employer retaliation and employment discrimination based on race. *Id.* ¶ 14.

### b.   Procedural Background

Plaintiff filed his Complaint on October 4, 2021, against the Individual Defendants and Harris County. Doc. #1. On December 13, 2021, the Individual Defendants filed a Joint Motion to Dismiss all of Plaintiff's claims against them. Doc. #7. At the scheduling conference on January 14, 2022, Plaintiff indicated that he did not plan to respond to the Individual Officers Motion to Dismiss and he was therefore unopposed to it. The Court granted the Individual Officer's Motion to Dismiss that same day, leaving Harris County as the sole defendant. Doc. #12.

Plaintiff's Complaint alleges various causes of action against Harris County: § 1983 *Monell* liability; substantive and procedural Due Process violations; free speech retaliation;

3

hostile work environment; retaliation; and race and color discrimination under the Equal Protection Clause, Title VII of the Civil Rights Act of 1964 ("Title VII"), and 42 U.S.C. §§ 1981, 1983. Doc. #1.

## II.    Legal Standard

Summary judgment is proper where there is no genuine dispute of material fact and the moving party is entitled to a judgment as a matter of law. FED. R. CIV. P. 56(a). A district court "may accept as undisputed the movant's version of the facts and grant [the] motion . . . when the movant has made a prima facie showing of entitlement to summary judgment." *Better Bags, Inc. v. Ill. Tool Works, Inc.*, 939 F. Supp. 2d 737, 740 (S.D. Tex. 2013). Additionally, "even where the underlying facts are undisputed, . . . the court must indulge every [r]easonable inference from those facts in favor of the party opposing the motion." *Am. Tel. & Tel. Co. v. Delta Commc'ns Corp.*, 590 F.2d 100, 101–02 (5th Cir. 1979). However, summary judgment "may not be thwarted by conclusional allegations, unsupported assertions, or presentation of only a scintilla of evidence." *Rogers v. Bromac Title Servs., LLC*, 755 F.3d 347, 350 (5th Cir. 2014).

## III.    Analysis

When a public employer's conduct violates both Title VII and a separate constitutional or statutory right, the injured employee may pursue a remedy under § 1983 as well as under Title VII. *Johnston v. Harris Cnty. Flood Control Dist.*, 869 F.2d 1565, 1573 (5th Cir. 1989). When a plaintiff has invoked Title VII, § 1983, and § 1981 in the same lawsuit, the Fifth Circuit has noted that "specific consideration of these alternate remedies for employment discrimination . . . is necessary only if their violation can be made out on grounds different from those available under Title VII." *Id.* at 1575. Section 1983 does not create any substantive rights, and instead "creates only a remedy for violations of rights secured by federal statutory and constitutional

4

law." *Irby v. Sullivan*, 737 F.2d 1418, 1427 (5th Cir.1984). Thus, an underlying constitutional or statutory violation is a predicate to liability under § 1983. *Johnston*, 869 F.2d at 1574. However, § 1983 is not available when the underlying statute provides an exclusive remedy for violations of its own terms. *Irby*, 737 F.2d at 1428. Though Title VII creates rights secured by the laws of the United States, it provides the exclusive remedy for a violation of its own terms. *Id.*

The express "action at law" provided by § 1983 for the "deprivation of . . . rights secured by the Constitution and laws" provides the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981 when the claim is pressed against a state actor. *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 702 (1989). Plaintiffs must assert causes of action against local government actors under § 1983 in order to obtain a monetary remedy for violations of civil rights protected by § 1981. *Escamilla v. Elliott*, 816 F. App'x 919, 922 (5th Cir. 2020). "In other words, plaintiffs cannot assert an independent cause of action under § 1981 against state actors; the § 1981 right must instead be asserted by means of the § 1983 procedural remedy." *Id.*

### a.    Plaintiff's Claimed Constitutional Violations Under § 1983 and § 1981

#### 1.    § 1983 Municipal Liability

Harris County moves for summary judgment on Plaintiff's § 1983 claims against it. Doc. #28 at 12–15 ¶¶ 22–28. A municipality is a "person" subject to suit under § 1983. *See Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). "A local government entity may be sued if it is alleged to have caused a constitutional tort through a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 166 (5th Cir. 2010). Alternatively, municipal liability may attach where the constitutional deprivation is pursuant to a

governmental custom, even if such custom has not received formal approval. *Monell*, 436 U.S. at 690, 91. For municipal liability under § 1983, a plaintiff must identify "(1) an official policy [or custom], of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom." *Pineda v. City of Houston,* 291 F.3d 325, 328 (5th Cir. 2002).

"For a municipality to be liable on account of its policy, the plaintiff must show, among other things, either (1) that the policy itself violated federal law or authorized or directed the deprivation of federal rights or (2) that the policy was adopted or maintained by the municipality's policymakers 'with deliberate indifference as to its known or obvious consequences.'" *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 309 (5th Cir. 2004) (citing *Board of County Comm'rs of Bryant County v. Brown*, 520 U.S. 397, 407 (1997)). "For an official to act with deliberate indifference, the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Estate of Davis ex rel. McCully v. City of North Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005). If a plaintiff adduces evidence of an official policy promulgated with deliberate indifference, then the plaintiff must prove that the government's official policy was the "moving force" and actual cause of the deprivation of constitutional rights. *See Piotrowski*, 237 F.3d at 578.

Harris County contends that "there is no evidence that an official county policy or custom was the moving force or direct cause of any injury complained of by Plaintiff." Doc. #28 ¶ 15. Plaintiff argues that policymakers "would be foolish to publish written policies that are knowingly unlawful," but Harris County's discriminatory policies can be proven through persistent and widespread discriminatory practices based on race and color that were "prevalent

in the workplace at the Constable's Office." Doc. #30 ¶¶ 26–28. To support this argument, Plaintiff points to five deposition testimonies: his own (Doc. #28, Ex. 26), and those of Deputy Constables Bryan Skero (Doc. #30, Ex. 5), Kelvin Jason (Doc. #30, Ex. 6), David Johnson (Doc. #30, Ex. 7), and Jimmy Evans, III (Doc. #30, Ex. 8). However, these deposition testimonies are limited to the actions of individuals and are silent on any County action or general policy. *See* Doc. #30, Ex. 5, Ex. 6, Ex. 7, Ex. 8. As such, any discussion of an officially sanctioned discriminatory policy by Harris County is conclusory and not specific enough to create a fact question at the summary judgment stage. *See id.* Harris County cannot be liable for civil rights violations under a theory of *respondeat superior*. *See Davidson v. City of Stafford*, 848 F.3d 384, 395 (5th Cir. 2017). Plaintiff has failed to produce evidence sufficient to create genuine dispute of material fact as to whether acts officially sanctioned or ordered by Harris County directly caused his alleged injury. Accordingly, Plaintiff's claim for municipal liability under § 1983 fails as a matter of law and Harris County's Motion for Summary Judgment is granted with respect to that claim.

## 2. Due Process

Harris County next moves for summary judgment on Plaintiff's claim for violation of due process. Doc. #28 at 15 ¶¶ 29–31. It is unclear from Plaintiff's Complaint whether he is asserting a substantive or procedural due process claim. *See* Doc. #1. Out of an abundance of caution, Harris County argues that both a substantive and a procedural due process claim fail as a matter of law. Doc. #28 at 15 ¶¶ 29–31. Because the analysis is similar, the Court analyzes both claims concurrently.

To succeed on a claim for violation of substantive due process, the Plaintiff must show "(1) that he had a property interest/right in his employment, and (2) that the public employer's

7

termination of that interest was arbitrary or capricious." *Babin v. Breaux*, 587 Fed. Appx. 105, 112–13 (5th Cir. 2014).   Similarly, procedural due process entitles a plaintiff who is a public employee with a property right in his employment to notice of the charges against the employee, explanations of the employer's evidence, and an opportunity to present the employee's side of the story. *Cleveland Bd. Of Educ. v. Loudermill,* 470 U.S. 532, 546 (1985).  A property interest for the purpose of due process claims is "an individual entitlement grounded in state law, which cannot be removed except for 'just cause.'" *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 430 (1982).  Although the Constitution provides procedural safeguards to prevent deprivation of property interests, the interests themselves are created by state statute, local ordinance, written contract, or mutually explicit understandings enforceable under state law as express or implied contracts. *Johnson v. Southwest Miss. Regional Med. Center,* 878 F.2d 856, 858 (5th Cir. 1989). The Court must therefore look to the laws of Texas to determine whether a property right exists. *Williams v. Texas Tech Univ. Health Scis. Ctr.*, 6 F.3d 290, 293 (5th Cir. 1993).

It has been well-established in Texas for over a century that all employees are presumed to be hired "at-will." *Pehnke v. City of Galveston,* 977 F. Supp. 827, 830 (S.D. Tex. 1997).  If there are no specific contract terms or express agreements to the contrary, the employment relationship may be terminated at any time by either the employer or employee. *Id.* (citing *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 311 (5th Cir. 1995)).  Here, Plaintiff does not claim that there was a contract with Harris County controlling the terms of his employment, nor is there a statute or rule that altered his "at-will" employment. *See* Doc. #1.  Moreover, Plaintiff does not defend his due process claims in his Response. *See* Doc. #30.  Therefore, Plaintiff's substantive and procedural due process claims fail as a matter of law and Harris County's Motion for Summary Judgment is granted with respect to those claims.

**b.    Plaintiff's Direct Discrimination Claims under Title VII (§ 1983 and § 1981)**

To succeed on a claim of intentional discrimination under Title VII, § 1983, or § 1981, a plaintiff must first prove a *prima facie* case of discrimination. *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996). Accordingly, the "inquiry into intentional discrimination is essentially the same for individual actions brought under sections 1981 and 1983, and Title VII." *Lauderdale v. Texas Dep't of Crim. Just., Institutional Div.*, 512 F.3d 157, 166 (5th Cir. 2007). One important difference between Title VII and § 1983 is that "[u]nlike Title VII, § 1983 applies to individuals." *Sims v. City of Madisonville*, 894 F.3d 632, 640–41 (5th Cir. 2018). While the prima facie elements of a Title VII claim may establish an *employer's* liability for intentional discrimination, a § 1983 plaintiff must additionally plead and prove which actions of an individual defendant caused the harm. *Sims v. City of Madisonville*, 894 F.3d 632, 641 (5th Cir. 2018). The only remaining defendant in this case is Harris County, a municipality. For the forgoing reasons, the Court analyzes Plaintiff's intentional discrimination claims under the Title VII framework.

**1.    Title VII Color Discrimination**

An employee who brings a lawsuit under Title VII of the Civil Rights Act of 1964 must first exhaust administrative remedies by filing an administrative charge with the EEOC. *McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 273 (5th Cir. 2008). Consequently, in a Title VII lawsuit, the Fifth Circuit has limited the trial court's scope of inquiry to "those grounds of a Title VII complaint that were raised in the administrative process." *Anderson v. Lewis Rail Serv. Co.*, 868 F.2d 774, 775 (5th Cir. 1989). In looking at that process, district courts can evaluate the "scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination." *Donnelly v. Academic Partnerships, LLC*, 2021 WL 462052 at *2 (N.D. Tex.

9

Feb. 9, 2021) (citing *McClain*, 519 F.3d at 274).

Here, Plaintiff alleges that he was discriminated against based on his color, and he brings a Title VII claim against Harris County for that alleged discrimination. Doc. #1. Color discrimination "arises when the particular hue of the plaintiff's skin is the cause of the discrimination, such as in the case where a dark-colored African–American individual is discriminated against in favor of a light-colored African–American individual." *Hunter v. Texas Energy Servs. LP*, No. 2:14-CV-142, 2014 WL 5426454, at *3 (S.D. Tex. Oct. 23, 2014). Plaintiff failed to check the "color" box on both his initial and amended EEOC charges. Doc. #28, Ex. 27, Ex. 28. Plaintiff further failed to even mention the word "color" in either of his EEOC charges, and he concluded the amended charge by clarifying that his Title VII claim was based on race. *Id.*

Plaintiff argues that by "checking the 'race' box, the charge—by EEOC definition—included both race and color." Doc. #30 ¶ 23. But the fact that the EEOC charge contains separate boxes for color and race emphasizes that, although they are related, they are distinct forms of discrimination. Designating a separate box for color while including color discrimination under racial discrimination would render the color box redundant. Because Plaintiff failed to check the color box, Plaintiff's claims of discrimination based on color are outside the scope of his EEOC charge. Plaintiff therefore failed to exhaust his administrative remedies with respect to his color discrimination claim. Thus, his color discrimination claim fails as a matter of law, and Harris County's Motion for Summary Judgment is granted with respect to that claim.

### 2. Equal Protection and Racial Discrimination

Harris County moves for summary judgment on Plaintiff's claim for racial discrimination brought under the Equal Protection Clause through § 1983 and under Title VII. Doc. #28 at 17 ¶ 33. To state a claim of racial discrimination under the Equal Protection Clause and § 1983, a plaintiff must allege that he "received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent." *Guerrero v. King*, 473 F. App'x 379, 380 (5th Cir. 2012). To establish discriminatory intent, a plaintiff must show "that the decision maker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effect on an identifiable group." *Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 412 (5th Cir. 2015).

When, as in this case, a plaintiff attempts to prove allegations of discrimination through indirect or circumstantial evidence, the claims are considered under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), as modified in *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003), and *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305 (5th Cir. 2004). *See Rachid*, 376 F.3d at 312. The complainant in a Title VII case must carry the initial burden under the statute of establishing a prima facie case of racial discrimination. *McDonnell Douglas Corp.*, 411 U.S. at 802. This may be done by showing that the plaintiff: (1) was a member of a protected class; (2) was qualified for the position; (3) was terminated; and (4) after discharge was replaced with a person who is not a member of the protected class. *Frank v. Xerox Corp.*, 347 F.3d 130, 137 (5th Cir. 2003). The burden then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the employee's termination. *McDonnell Douglas Corp.*, 411 U.S. at 802. If the defendant meets its burden of production, "the plaintiff must then offer sufficient evidence to create a genuine issue of material fact either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or

11

(2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another 'motivating factor' is the plaintiff's protected characteristic (mixed-motive[s] alternative)." *Rachid*, 376 F.3d at 312.

Here, there is no dispute that Plaintiff belongs to a group protected by Title VII, was qualified for the position, and was terminated. However, Plaintiff does not provide any information or evidence regarding his replacement. *See* Doc. #1; Doc. #30. Harris County argues that Plaintiff's racial discrimination claims fail as a matter of law because it proffered legitimate, nondiscriminatory reasons for Plaintiff's termination. Doc. #28 ¶¶ 47. Specifically, Harris County cites the three instances of Zane wrongfully biting a constable or suspect while deployed by Plaintiff, along with Plaintiff's alleged mishandling of evidence. *See id.* ¶¶ 5–9. Even assuming that Internal Affairs was wrong when it concluded Plaintiff committed policy violations, "even an employer's incorrect belief in the underlying facts—or improper decision based on those facts—can constitute a legitimate, non-discriminatory reason for termination." *Amezquita v. Beneficial Texas, Inc.*, 264 F.App'x 379, 386 (5th Cir. 2008). Harris County therefore met its burden to show a legitimate, nondiscriminatory reason for Plaintiff's termination. Plaintiff argues in response that that these "so-called 'legitimate or nondiscriminatory reason[s]' . . . [were] not justified" or, in other words, that they were pretextual. Doc. #30 ¶ 36.

To support this argument, Plaintiff provides deposition testimony from Deputy Constable Bryan Skero stating that he and others sometimes forget to turn their body camera on, but Plaintiff was the only one to ever be disciplined for it. Doc. #30, Ex. 5 at 16. Additionally, in his EEOC charge, Plaintiff stated that he expressed a potential solution to the body camera problem before, and therefore was "perplexed as to why Precinct 3 would use [his] bodycam as

one of the bases to launch a formal investigation when [he] had been vocal about having issues . . . ." Doc. #28, Ex. 28 at 2, 5. However, Plaintiff failed to turn on his body camera during multiple dog-bite incidents. Additionally, three of the six people involved in making the decision to terminate Plaintiff were African American men: Bryan Howard and Herman Sanders on the ADC, and Constable Eagleton as the final decision maker. Doc. #28, Ex. 16, Ex. 22. Plaintiff does not provide any evidence that any of those gentlemen harbored animus against Plaintiff. *See* Doc. #1; *see also* Doc. #30. Plaintiff fails to provide any evidence of pretext or mixed motives, and therefore his discrimination claims (under Title VII, § 1983, and § 1981) fail as a matter of law. Harris County's Motion for Summary Judgment is accordingly granted with respect to those claims.

### 3. Hostile Work Environment

A hostile work environment exists "when the workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65–67 (1986)) (internal citations omitted); *see also Vallecillo v. U.S. Dep't of Hous. & Urb. Dev.*, 155 F. App'x 764, 766 (5th Cir. 2005). To establish a prima facie case of a race-based hostile work environment, the plaintiff must prove: (1) he belongs to a protected class; (2) he was subjected to unwelcome harassment; (3) the harassment complained of was based on race/color; (4) the harassment complained of affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action. *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002). The standard requires an "objectively hostile or abusive environment—one that a

13

reasonable person would find hostile or abusive—as well as the victim's subjective perception that the environment is abusive." *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 17 (1993). The mere utterance of an offensive comment which provokes offensive feelings in an employee is not sufficient evidence of a hostile work environment. *Id.* at 21. "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher v. City of Boca Raton,* 524 U.S. 775, 788 (1998).

In this case, Plaintiff claims that he was subjected to a hostile work environment because of his coworkers' comments in response to the arrest and murder of George Floyd, his exclusion from office events and birthday parties, numerous derogatory text messages from co-workers, and other officers' failure to back him up on missions. Doc. #1 ¶¶ 25–28; Doc. #28, Ex. 26 at 15–23, Ex. 28 at 2–6; Doc. #30, Ex. 5 at 7, 26–27, Ex. 6 at 10–11. Plaintiff fails to provide any summary judgment evidence corroborating or creating a fact question regarding Harris County's failure to back him up on missions. *See* Doc. #30. Plaintiff claims that the most offensive text he received was the text that was exchanged following the toxicology report of George Floyd. Doc. #28, Ex. 26 at 15, Ex. 30. However, nothing in the text exchange following George Floyd's toxicology report targets Plaintiff, harasses him on the basis of his race, or even mentions race. *See* Doc. #28, Ex. 30. Plaintiff fails to mention any other derogatory text messages in either of his EEOC charges. Doc. #28, Ex. 27, Ex. 28. Moreover, Plaintiff does not provide any nonconclusory evidence that his exclusion from certain office events was because of his race. *See* Doc. #30. There is not enough summary judgment evidence in the record to create a genuine question of material fact regarding a hostile work environment for Plaintiff. Accordingly, Harris County's Motion for Summary Judgment is granted with respect to that claim.

14

### 4. Retaliation

Finally, Harris County moves for summary judgment on Plaintiff's claim for free speech retaliation. Doc. #28 at 17–21 ¶¶ 34–38. To prevail on a free speech retaliation claim, a public employee must establish that (1) he suffered an adverse employment action; (2) his speech involved a matter of public concern; (3) his interest in commenting on matters of public concern outweighed the defendant's interest in promoting workplace efficiency; and (4) his speech was a substantial or motivating factor in the defendant's adverse employment action. *Burnside v. Kaelin*, 773 F.3d 624, 626 (5th Cir. 2014). Similarly, to establish a prima facie case of retaliation, a plaintiff must show: (1) he engaged in protected activity; (2) an adverse employment action occurred; and (3) a causal link existed between the protected activity and adverse action. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 348 (5th Cir. 2007).

Here, Plaintiff claims his speech during the mandatory meeting called by Major Villareal on June 1, 2020, during which the text message following the George Floyd toxicology report was addressed, resulted in his termination. Doc. #1 at 7 ¶¶ 25–26; Doc. #28, Ex. 26 at 43. However, Plaintiff provides no evidence that his termination decision was motivated by his speech during the June 1, 2020, meeting. The memo from the ADC meeting on August 27, 2020, specifies its review of the investigations into Plaintiff's behavior regarding the dog bites and missing narcotics inventory. Doc. #28, Ex. 22. The June 1, 2020, meeting is not mentioned. *See id.* Moreover, each ADC voting member testified that they had no knowledge of Plaintiff's speech during the June 1, 2020, meeting. *See* Doc. #28, Ex. 17, Ex. 18, Ex. 19, Ex. 20, Ex. 21. Plaintiff fails to offer any rebuttal evidence suggesting that a decision maker in his termination had knowledge of his speech at the June 1, 2020, meeting. Plaintiff fails to show that there is a genuine question of material fact regarding whether his free speech was a substantial or

15

motivating factor in his termination. Therefore, Plaintiff's free speech and retaliation claims fail as a matter of law and Harris County's Motion for Summary Judgment is granted with respect to those claims.

## IV.   Conclusion

For the foregoing reasons, Plaintiff has failed to put forth evidence creating a fact question sufficient for any of his claims to survive summary judgment. Accordingly, Harris County's Motion for Summary Judgment (Doc. #28) is GRANTED. Harris County's Motion to Strike (Doc. #33) and Plaintiff's Request for Submission or Oral Hearing (Doc. #40) are DENIED as MOOT.

It is so ORDERED.

SEP 2 8 2023
_____
Date

_____
The Honorable Alfred H. Bennett
United States District Judge

16