IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BERT W. WHITTINGTON, III | § | |
| PLAINTIFF | § | |
| | § | |
| - VERSUS - | § | CIVIL ACTION NO. 4:21-CV-03220 |
| | § | |
| KIRK WAYNE BONSAL, JR., ET AL | § | |
| DEFENDANTS | § | |

## PLAINTIFF'S MOTION FOR RECONSIDERATION OF SUMMARY JUDGMENT

TO THE HONORABLE JUDGE OF THE UNITED STATES DISTRICT COURT:

Into court comes the plaintiff, Bert W. Whittington, III, who files this Plaintiff's Motion for Reconsideration of Summary Judgment and in support thereof would respectfully show the court as follows:

## PROCEDURAL HISTORY

1. On September 28th, 2023 the court entered an order that summarily dismissed all of the plaintiff's claims for relief. [Doc. 53]. Pursuant to Fed. R. Civ. P. § 59(e), the deadline to request the court to alter or amend its order is October 26th, 2023.

## GROUNDS FOR RECONSIDERATION

2. In its dismissal order, the court identified the following reasons for granting a summary judgment in favor of the defendants:

   (1)    that, the plaintiff failed to sufficiently show that a policy, custom, or practice was the "moving force" and actual cause of the plaintiff's injury [Doc. 53, Pg. 7];

   (2)    that, the plaintiff failed to sufficiently show that a property right in employment had altered the "at-will" employment presumption [Doc. 53, Pg. 8];

   (3)    that, the plaintiff failed to exhaust administrative remedies prior to suit with regards

to the color discrimination claim [Doc. 53, Pg. 10];

(4)     that, the plaintiff failed to sufficiently show that employment termination was based on a discriminatory reason [Doc. 53, Pgs. 12-13];

(5)     that, the plaintiff failed to sufficiently show that a hostile work environment existed due to a discriminatory reason [Doc. 53, Pg. 14]; and

(6)     that, the plaintiff failed to sufficiently show that adverse employment action was based on retaliation for exercising free speech [Doc. 53, Pg. 15].

3.     <u>Race and Color Discrimination</u>. While the plaintiff had a total of five claims for relief, the core of each claim centered on discrimination based on the plaintiff's race and color. The plaintiff cannot deny that his prior counsel did not check the 'color' box on the charge of discrimination filed with the U.S. Equal Employment Opportunity Commission ("EEOC"); however, by definition of the EEOC itself, 'race' includes 'color', but 'color' does not include 'race'. [Doc. 30; ¶ 23]. These definitions are significant.

4.     In its summary judgment order, the court clearly distinguishes the plaintiff's argument by posing the question – why have a box for 'race' and 'color' if each overlap the other? Based on the EEOC definition of 'color', it is an impossibility for 'race' to be included while the inverse is not true. The community must rely on a reasonable read of how laws are worded and a plain, reasonable read of the EEOC definition of 'race' is that it includes 'color'.

5.     Notwithstanding whether a discrimination claim based on 'color' can stand, the plaintiff still had a claim based on 'race' discrimination. The summary judgment order doesn't seem to directly address this claim. In reading the order, it is inferred that the plaintiff's 'race' claim was extinguished because of the other cited failures – particularly with regards to the employee status; polices, customs, and practices; and work environment.

6.     In the order, the court notes that the plaintiff did not specifically mention the history of derogatory text messages being communicated within the constable's office. [Doc. 53, Pg.

14]. While this is true, the plaintiff did generally complain to the EEOC that he had "long suffered through racially insensitive and hostile language" in the workplace. [Doc. 28, Exs. 25 and 26]. This would comprehensively include text messages. Going into meticulous detail was not necessary for the EEOC complaint.

7.    The plaintiff asks the court to reconsider its assessment of the term 'race', the scope of the underlying EEOC charge, and the disposition of the plaintiff's 'race' claim. It is the plaintiff's position that the instant case is within the scope of the underlying EEOC charge.

8.    Policy, Custom, and Practice. The court said that the plaintiff was "silent on any County action or general policy" that would support a claim under 42 U.S.C. § 1983. [Doc. 53, Pg. 7]. The court specifically said that, in its opinion, testimony and evidence developed in discovery only showed that the discriminatory acts were "limited to the actions of individuals" and not "officially sanctioned or ordered" by the county. [Doc. 53, Pg. 7].

9.    The plaintiff asks the court to reevaluate the testimony and evidence presented from a different viewpoint. The key testimony extracts referenced in the plaintiff's summary judgment response shows that the discriminatory practices within the constable's office were pervasive and mostly being committed at an administrative level. [Doc. 30, ¶¶ 1-2; 10-14; 35(d)-(h)]. It is the plaintiff's position that discriminatory practices under these circumstances could not reasonably exist without being "officially sanctioned or ordered" by the policymaking leadership.

10.   More to point, the testimony and evidence developed in discovery showed that the plaintiff was not alone in being discriminated against in the workplace. The testimony and evidence showed that employees who were African American with dark skin color were routinely treated worse than other employees with light skin color. [Doc. 30, ¶¶ 1-2; 10-14; 35(d)-

(h)]. The only reasonable explanation for this phenomenon is that the discriminatory practice was "officially sanctioned or ordered" by policymaking leadership.

11. <u>Hostile Work Environment</u>. The plaintiff concedes that he was an "at-will" employee; however, the grounds for the plaintiff's termination from employment were pretextual in order to conceal discriminatory practices and in retaliation for the plaintiff challenging the discriminatory practices. [Doc. 30, ¶¶ 19-20]. Each of the examples of discriminatory practices given by the plaintiff was not meant to be considered in isolation of each other, but rather in totality.

12. Pointing to the mandatory staff meeting where the George Floyd toxicology report and related staff communications were discussed is a prime instance. [Doc 53, Pg. 14-15]. Discussion of this matter seems to have been undervalued as to its importance and nexus to the pervasive discriminatory practices. Discussion of this matter erroneously suggests that the plaintiff complains that this sole matter was the basis of his employment termination when in fact it was simply the trigger for the plaintiff to openly begin complaining about the pervasive discriminatory practices.

13. After this meeting is when the pretextual grounds for his later employment termination were quickly established. Had the plaintiff kept quiet about the discrimination, he no doubt would still be employed at the constable's office to this day working under disadvantageous employment conditions.

14. The plaintiff asks the court to reevaluate the testimony and evidence presented in a much broader context. The plaintiff endeavored to establish through pleadings and discovery a sufficient amount of facts and evidence to show the pervasive workplace discrimination within the constable's office. The plaintiff believes that, together as a whole, everything

presented reasonably shows the discriminatory practices.

## CLOSING AND PRAYER

15. This case has been closely watched by other employees of the constable's office who are African American with dark skin color and the case dismissal sent a message that they must live with a hostile work environment based on race and color discrimination or face pretextual employment termination with subsequent blacklisting from new employment. The plaintiff's case affects more than just the plaintiff.

16. For the reasons set forth herein, the plaintiff prays that the court vacate its September 28th, 2023 summary judgment order and reinstate this case on the trial docket. The plaintiff further requests the opportunity to present oral arguments on this motion.

Respectfully submitted,

/ s / Philip J. Orth, III

**Philip J. Orth, III**
Attorney-in-Charge

Texas BCN 15323070
Federal BCN 14065
16406 Lamplighter Street
Crosby, Texas 77532
(713) 520-8333
(772) 217-8162 Fax
philip.orth@yahoo.com

Attorney for:
Bert W. Whittington, III

## CERTIFICATE OF SERVICE

Pursuant to Fed. R. Civ. P. § 5(b) and Loc. R. § 5.3, I hereby certify that a true and correct copy of these papers has been served on all interested parties by either hand delivery, facsimile, express mail, certified mail return receipt requested, or electronic delivery on October 26th, 2023.

/ s / Philip J. Orth, III

**Philip J. Orth, III**
Attorney-in-Charge