# United States Court of Appeals for the Fifth Circuit

United States Courts
Southern District of Texas
FILED

*July 28, 2025*

Nathan Ochsner, Clerk of Court

No. 24-20172

United States Court of Appeals
Fifth Circuit

**FILED**

July 7, 2025

Lyle W. Cayce
Clerk

BERT W. WHITTINGTON,

*Plaintiff—Appellant*,

*versus*

HARRIS COUNTY, TEXAS,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:21-CV-3220

Before DENNIS, OLDHAM, and DOUGLAS, *Circuit Judges*.
PER CURIAM:[*]

Bert Whittington sued Harris County for employment discrimination. The district court granted summary judgment to Harris County. For the reasons that follow, we AFFIRM in part and REVERSE in part.

## I

Whittington began working for Harris County in January 2017 as a deputy constable with the Precinct 3 Constable's Office. He had previously

---

[*] This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

No. 24-20172

served in the Marine Corps for over two decades, graduated from the state police academy, and worked as a state trooper. Four months into his tenure with Harris County, the constable's office assigned Whittington to its Crime Interdiction Unit as a police canine handler. Whittington is "African American with dark skin color."

At the time of Whittington's employment, Sherman Eagleton served as the elected constable. Whittington alleges Eagleton "had no interest in the day-to-day administration of the Constable's Office." Instead, Chief Deputy Kirk Bonsal Jr. effectively ran the office—aided by a "small clique" of officers, "all of whom had light color skin" and "excluded anyone with dark skin color." These officers subjected Whittington to racist commentary, calling African Americans "a bunch of monkeys," "routinely" using the epithet "n****r," and describing a police vehicle as a "slave transport."

This behavior affected Whittington's work as an officer. His coworkers refused to provide him with field backup and left him to process crime scenes, evidence, and prisoners alone. Commanding officers regularly placed him in the most dangerous "front point" position during "high-risk tactical entries."

After Whittington raised concerns about discrimination to his supervisors, they began a series of investigations and disciplinary actions against him, including an investigation of three incidents where his police canine bit people. He alleges that these investigations were "pretextual" and "intended to conceal the true reason" for his eventual termination via general discharge. One year after his termination, Whittington filed a discrimination charge with the Equal Employment Opportunity Commission ("EEOC").

Relevant to this appeal, Whittington sued Harris County, which moved for summary judgment on all claims against it, except for

2

No. 24-20172

Whittington's 42 U.S.C. § 1985 claim.[1] The district court granted its motion. Whittington filed a motion for reconsideration under Federal Rule of Civil Procedure 59(e), which the district court denied on November 28, 2023.

## II

The parties dispute whether Whittington timely noticed his appeal. Supreme Court precedent requires us to treat "the timely filing of a notice of appeal in a civil case [a]s a jurisdictional requirement." *Bowles v. Russell*, 551 U.S. 205, 214 (2007). We review the district court's findings on any disputed jurisdictional facts for clear error. *Spriggs v. United States*, 132 F.4th 376, 379 (5th Cir. 2025).

Here, Whittington paid the filing fee for a notice of appeal before the thirty-day deadline. But for unknown reasons, the notice of appeal did not populate in the court's CM/ECF system. The court closed the case on January 10, 2024. On April 16, 2024, Whittington moved in the district court to docket the appeal, attaching to his motion four pieces of evidence.

First, he submitted the notice he allegedly filed on December 21, 2023, with the certificate of service signed and dated by his attorney on that date. Second, he submitted an email sent by the district court on December 21 confirming his filing fee was "successfully processed." Third, he submitted the complete docket sheet from his case in the district court. In relevant part, the docket sheet showed that no notice of appeal was filed on December 21, and that the district court terminated the case on January 10, 2024, and provided notice to the parties. Finally, Whittington submitted an email sent

---

[1] Accordingly, and because the district court did not address it, we decline to reach Whittington's claim of conspiracy under § 1985. *Cf. Stringer v. Town of Jonesboro*, 986 F.3d 502, 509 (5th Cir. 2021) (noting that "we are a court of review, not first view" (quoting *Cruson v. Nat'l Life Ins. Co.*, 954 F.3d 240, 249 n.7 (5th Cir. 2020))).

No. 24-20172

by a district court employee on April 4, 2024, "verify[ing]" receipt of the payment on December 21. That email further noted that "the payment screen appears before the docket entry is completed, so it is possible to pay the filing fee without completing the docket entry in its entirety."

The district court "deemed" the notice "timely filed as of December 21, 2023," and backdated it accordingly. It found "[t]he evidence attached to the Motion demonstrate[d] that [Whittington] paid the requisite filing fee and timely filed[,] . . . but the Notice of Appeal was not docketed due to a technical error." After carefully reviewing the record—and in deference to the district judge's superior familiarity with his own court's docketing system—we are not left with a "definite and firm conviction" that the district court clearly erred in deeming the appeal timely noticed. *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).

## III

Turning to the merits, we review the district court's grant of summary judgment de novo. *King v. King*, 117 F.4th 301, 308 (5th Cir. 2024) (citation omitted). Summary judgment is proper only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

## A

We first address Whittington's claim under 42 U.S.C. § 1983. Local governments, like Harris County, may be liable as "persons" under § 1983. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). Such claims require plaintiffs to "show: (1) an official policy (or custom) of which, (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose moving force is that policy (or custom)." *Ford*

4

No. 24-20172

*v. Anderson Cnty.*, 102 F.4th 292, 319 (5th Cir. 2024) (citation and quotation marks omitted).

Whittington fails to identify a Harris County policymaker who satisfies the second *Monell* prong. Whittington names Precinct 3 Constable Sherman Eagleton and Chief Deputy Constable Kirk Bonsal as the policymakers "responsible for the management of its workplace." But this argument is foreclosed by our precedent: "[A] constable's employment decisions within his own precinct do not constitute county-wide policy." *Anderson v. Harris Cnty.*, 98 F.4th 641, 644 (5th Cir. 2024) (citations omitted); *see also Rhode v. Denson*, 776 F.2d 107, 108 (5th Cir. 1985) ("We are unpersuaded that a constable of a Texas county precinct occupies a relationship to the County such that his edicts or acts may fairly be said to represent official county policy."). "[A] constable has authority over only a single precinct" and thus cannot support municipal liability. *Anderson*, 98 F.4th at 645 n.3.

Because he cannot satisfy the second *Monell* requirement, Whittington's § 1983 claim against Harris County fails as a matter of law.

B

We next address Whittington's claim of color discrimination under Title VII of the Civil Rights Act. *See* 42 U.S.C. §§ 2000e–2000e-17.

Title VII requires plaintiffs to exhaust their administrative remedies by filing a discrimination charge with the EEOC before bringing a lawsuit. *Id.* § 2000e-5(e)(1). The court may consider "only those grounds of a Title VII complaint . . . that were raised in the administrative process," *Mendoza v. Tex. Dep't of Hum. Servs.*, 162 F.3d 96, 96 (5th Cir. 1998) (per curiam) (unpublished table decision), including those "which can reasonably be expected to grow out of the charge of discrimination," *Young v. City of Houston*, 906 F.2d 177, 179 (5th Cir. 1990) (quoting *Sanchez v. Standard*

No. 24-20172

*Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970)). Because Whittington checked the box for "race" but not "color" discrimination in his EEOC charge, Harris County alleges that charge did not exhaust his color discrimination claim.

Our court has rarely addressed color discrimination under Title VII. But the EEOC defines color discrimination as "treating someone unfavorably because of skin color complexion." *Race/Color Discrimination*, EEOC, https://perma.cc/M2XL-QPDH (last visited June 24, 2025). And our sister circuits have ably described the difference between race and color discrimination. *See, e.g., Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 132 n.5 (4th Cir. 2002) ("Color discrimination arises when the particular hue of the plaintiff's skin is the cause of the discrimination, such as in the case where a dark-colored African-American individual is discriminated against in favor of a light-colored African-American individual."). This distinction makes sense of Title VII's prohibition of both "race" and "color" discrimination. *See Bailey v. United States*, 516 U.S. 137, 146 (1995) ("We assume that Congress used two terms because it intended each term to have a particular, nonsuperfluous meaning.").

In his charge of discrimination, submitted with the assistance of counsel, Whittington undisputedly did not check the box for "color" discrimination. In his allegations, Whittington describes a pattern of behavior and commentary related to his race. At one point in his EEOC charge, Whittington alleges that "Precinct 3 managed to take a more understanding approach to their white officers." But that is as close as the charge comes to alleging discrimination based on skin color or tone. Rather, his allegations speak to discrimination based on race. *See Bryant*, 288 F.3d at 132–33 & n.5 (finding allegations of "race discrimination" do not "reasonably" encompass color discrimination).

6

No. 24-20172

We therefore affirm the district court's grant of summary judgment to Harris County on Whittington's color discrimination claim.

## C

Whittington brings three race discrimination claims under Title VII. These claims sound in discriminatory termination, retaliation, and hostile work environment. Because Whittington presents no direct evidence of discrimination, we apply the framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 793 (1973). We take each claim seriatim.

### 1

First, Whittington claims the County terminated his employment based on race. Title VII prohibits an employer from "discharg[ing]" or "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment[] because of . . . race." 42 U.S.C. § 2000e-2(a)(1). To make out a *prima facie* case of discriminatory termination, Whittington must show that he "(1) belongs to a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside [his] protected group or was treated less favorably than other similarly situated employees outside [his] protected group." *Shahrashoob v. Tex. A&M Univ.*, 125 F.4th 641, 649 (5th Cir. 2025) (citing *Ernst v. Methodist Hosp. Sys.*, 1 F.4th 333, 339 (5th Cir. 2021)). The burden then shifts to Harris County "to articulate some legitimate, nondiscriminatory reason" for the action. *McDonnell Douglas*, 411 U.S. at 802. Whittington must then "produce substantial evidence"[2] that the

---

[2] "Put in terms closer to the summary judgment standard, the plaintiff must 'offer sufficient evidence to create a genuine issue of material fact' vis-à-vis the defendant's

7

County's "proffered legitimate nondiscriminatory reason is a pretext for discrimination." *Outley v. Luke & Assocs., Inc.*, 840 F.3d 212, 216 (5th Cir. 2016) (quoting *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 233 (5th Cir. 2015)).

The district court correctly found that Whittington satisfied the first three elements but erred in analyzing the fourth *prima facie* element and Whittington's pretext argument.

Harris County's "legitimate business reasons" for terminating Whittington came from two investigations conducted at Chief Deputy Kirk Bonsal's behest. One investigation concerned an incident where Whittington had mishandled evidence and violated department policies, leading to an unattended prisoner in Whittington's custody accessing and consuming confiscated drugs. The other focused on Whittington's work as a police canine handler because his dog bit people on three occasions. He also violated County policy by failing to use his body camera. These incidents are, on their face, legitimate nondiscriminatory reasons that could support Harris County's decision to terminate Whittington.

But other evidence cuts the other way and suggests a rational jury could find the County's story is pretextual. Whittington was denied access to County vehicles to transport his canine, when such vehicles were regularly provided to white officers. His superior officers also demanded that he perform "subservient task[s]" like cleaning cars soiled with excrement, a task that white officers "historically were never tasked with." Most importantly, he demonstrated that other officers did not face disciplinary actions for their similar policy violations, particularly his failure to wear body

---

proffered reason." *Hager v. Brinker Tex., Inc.*, 102 F.4th 692, 704 (5th Cir. 2024) (quoting *Fahim v. Marriott Hotel Servs., Inc.*, 551 F.3d 344, 349 (5th Cir. 2008)).

cameras. Chief Deputy Bonsal also investigated only Whittington allegedly mishandling evidence and a prisoner, even though other officers "had contact with the narcotics and the [prisoner]." This unequal treatment could support a jury's finding of pretext. *Cf. Harris v. FedEx Corp. Servs., Inc.*, 92 F.4th 286, 298 (5th Cir. 2024) (finding probative evidence of pretext where coworkers of equal rank "performed the same" as plaintiff "but were not given warnings and were not fired").

Whittington created a genuine issue of material fact regarding whether the County fired him based on pretextual reasons. We reverse the grant of summary judgment on this claim.

### 2

Second, Whittington claims the County retaliated against him based on race. Title VII prohibits retaliation by an employer against an employee who "has opposed any practice made an unlawful employment practice" under Title VII. 42 U.S.C. § 2000e-3(a). "To state a claim for retaliation under Title VII, a plaintiff must show that (1) he engaged in conduct protected by Title VII; (2) he suffered a materially adverse action; and (3) a causal connection exists between the protected activity and the adverse action." *Cabral v. Brennan*, 853 F.3d 763, 766–67 (5th Cir. 2017) (citation and internal quotation marks omitted). Temporal proximity between the adverse action and protected activity supports a finding of pretext. *Harris*, 92 F.4th at 298 (finding less than one month between the two events indicative of pretext). At summary judgment, the "ultimate question" is "whether a reasonable fact-finder could conclude that the employer would not have fired the employee 'but for' the employee's decision to engage in an activity protected by Title VII." *Alkhawaldeh v. Dow Chem. Co.*, 851 F.3d 422, 428 (5th Cir. 2017) (citing *Feist v. La., Dep't of Just., Off. of the Atty. Gen.*, 730 F.3d 450, 454 (5th Cir. 2013)).

No. 24-20172

In general, Whittington alleged that his coworkers' discriminatory behavior "worsened after he began objecting to the racial bias in the workplace." That behavior included increasing refusals to assist him with police work. Whittington reported increased mistreatment after he objected to comments about African Americans being an inferior race and other racially insensitive comments. On one occasion, a supervising officer called a mandatory meeting to single him out for his complaints. And the County terminated Whittington on the same day that he reported a white colleague for violating a juvenile suspect's civil rights.

A reasonable jury could also find that the precinct began its disciplinary investigations as a retaliatory measure. While white officers received reprimand letters for violations of the bodycam policy, Whittington faced a full-scale investigation. That investigation was initiated and overseen by Chief Deputy Bonsal, as chair of the board reviewing Whittington's performance. Bonsal was a ringleader of the precinct's discriminatory behavior—a jury could reasonably infer that his motives were less than pure. Whittington's account indicates a pattern of increased discriminatory behavior culminating in his termination, and a reasonable jury could find retaliation. We reverse the district court's grant of summary judgment on this claim.

3

Lastly, Whittington claims the County created a hostile work environment. Title VII prohibits employers from "requir[ing] people to work in a discriminatorily hostile or abusive environment." *Wantou v. Wal-Mart Stores Tex., LLC*, 23 F.4th 422, 433 (5th Cir. 2022) (citation and internal quotation marks omitted). "To survive summary judgment on a hostile work environment claim, a plaintiff must show that (1) he is a member of a protected class; (2) he suffered unwelcomed harassment; (3) the harassment

was based on his membership in a protected class; (4) the harassment 'affected a term, condition, or privilege of employment'; and (5) 'the employer knew or should have known' about the harassment and 'failed to take prompt remedial action.'" *Id.* (quoting *West v. City of Houston*, 960 F.3d 736, 741 (5th Cir. 2020)).[3] The work environment must be "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21–22 (1993)). *Clark v. City of Alexandria* directs courts to assess "[t]he totality of the employment circumstances," 116 F.4th 472, 479 (5th Cir. 2022) (quoting *West*, 960 F.3d at 742)—and no two cases are exactly alike.

Whittington presented evidence of outrageous workplace statements that exceed mere teasing or offhand comments. *Cf. Faragher*, 524 U.S. at 788 (noting that in general "simple teasing, offhand comments, and isolated incidents" do not constitute hostile work environment). As noted, Whittington presented evidence that his coworkers used the word "n****r" and described African Americans as a "bunch of monkeys," among other racist commentary. These racist comments were not isolated, but instead transpired over the course of Whittington's tenure with the precinct. A coworker also testified that two of Whittington's coworkers sent text messages discussing Whittington's "private parts," which they referred to as a "black mamba snake," and sent cartoon memes of a black snake intended to represent Whittington's penis. These text messages describing Whittington's genitalia were "ongoing" and sent with frequency.

---

[3] Harris County only disputes elements two and four on appeal.

11

No. 24-20172

Whittington also put forth evidence that he was continually put in unnecessarily dangerous situations at work because of his race.

Under the totality of the circumstances, the evidence of these repeated instances of unequivocal racial epithets and racist remarks are sufficient for Whittington to survive summary judgment on his hostile work environment claim. This court has acknowledged that "[p]erhaps no single act can more quickly alter the conditions of employment and create an abusive working environment than the use of an unambiguously racial epithet such as [the N-word] by a supervisor in the presence of his subordinates." *Woods v. Cantrell*, 29 F.4th 284, 285 (5th Cir. 2022) (alterations in original) (quoting *Rodgers v. W.-S. Life Ins. Co.*, 12 F.3d 668, 675 (7th Cir. 1993)). And although the text message using the N-word and the text message including the "monkeys" comment were not directed at Whittington specifically, they remain relevant to Whittington's hostile work environment claim. *See Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 409 (5th Cir. 2015) (noting that the harassment faced by two non-parties "also points toward a racially hostile environment"); *see also Monteiro v. Tempe Union High Sch. Dist.*, 158 F.3d 1022, 1033 (9th Cir. 1998) ("[R]acist attacks need not be directed at the complainant in order to create a hostile educational environment." (citation omitted)); 59 Fed. Reg. 11449–50 ("[R]acial acts need not be targeted at the complainant in order to create a racially hostile environment. The acts may be directed at anyone. The harassment need not be based on the ground of the victim's or complainant's race, so long as it is racially motivated (e.g., it might be based on the race of a friend or associate of the victim)."); *Smith v. Ne. Ill. Univ.*, 388 F.3d 559, 566–67 (7th Cir. 2004) (holding that harassment not directed at the plaintiff, including comments referring to others as "motherf[**]king black n[****]rs" or "motherf[**]king n[****]rs" not made in the plaintiff's presence, were "certainly relevant to the

No. 24-20172

determination of a hostile work environment claim," although they have less of an impact than harassment directed at the plaintiff).

Thus, we conclude that genuine disputes of material facts exist as to whether the use of racial slurs—such as the N-word and the description of African Americans as "monkeys"—along with frequent comments about Whittington's "private parts" as a "black mamba snake," and evidence that he was routinely placed in unnecessarily dangerous work situations because of his race, amount to "severe or pervasive" discriminatory conduct creating an "objectively hostile or abusive work environment." *Harris*, 510 U.S. at 21; *see also Abeita v. TransAmerica Mailings, Inc.*, 159 F.3d 246, 252 (6th Cir. 1998) (holding that issues of material fact existed as to whether employer's alleged comments, only one of which was directed specifically at the employee, created a hostile environment when the comments were allegedly "commonplace, ongoing, and continual"); *O'Shea v. Yellow Tech. Servs., Inc.*, 185 F.3d 1093, 1102 (10th Cir. 1999) (holding that issues of material fact existed as to whether a coworker's gender-motivated conduct, although not specifically directed at the employee, "so poisoned the entire body of conduct toward [the employee] that a jury reasonably could view all of the allegedly harassing conduct" against the employee, including facially neutral conduct, "as the product of sex and gender hostility").

We reverse summary judgment on the hostile work environment claim too.

## IV

For the foregoing reasons, we AFFIRM in part, REVERSE in part, and REMAND for further proceedings not inconsistent with this opinion.

No. 24-20172

Andrew S. Oldham, *Circuit Judge*, dubitante:

I have serious doubts about our jurisdiction to decide this case.

As the majority notes, the parties dispute whether Whittington timely filed his notice of appeal. *See ante*, at 3. "[T]he timely filing of a notice of appeal in a civil case is a jurisdictional requirement." *Bowles v. Russell*, 551 U.S. 205, 214 (2005). Reviewing the district court's factual findings for clear error, *Spriggs v. United States*, 132 F.4th 376, 379 (5th Cir. 2025), I am "left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985) (quotation omitted).

I do not think Whittington's evidence can support a finding of jurisdiction. On Whittington's telling, he filed a notice of appeal and paid the filing fee on December 21, 2023. ROA.744–45. Such a filing would fall comfortably within the time limit prescribed by the Federal Rules of Appellate Procedure. *See* Fed. R. App. P. 4(a)(1)(A), 4(a)(4)(A)(iv). But the notice of appeal "did not populate into the CM/ECF system." ROA.745. Thus, when the district court granted a motion to dismiss the Constable's Office as a party on January 10, 2024, it officially terminated the docket. ROA.745, 755.

Whittington later contacted the district court[1] and received a reply on April 4, 2024, confirming that the notice of appeal was never docketed. ROA.756. So, on April 16, he filed a motion to docket his appeal in the

---

[1] The record does not reveal exactly when he did so.

district court. **ROA.744**. The district court granted Whittington's motion on April 17 and ordered the clerk to docket the notice of appeal.[2] **ROA.757**.

But none of the record evidence shows Whittington timely filed his notice of appeal.

He first proffered the notice allegedly filed on December 21 and the accompanying certificate of service signed by his attorney. **ROA.747–48**. Beyond his counsel's dated signature, this document bears no evidence that it even existed on that date. It certainly does not indicate filing. So it is not probative in any way.

Second, Whittington submitted an email sent by the district court on December 21 confirming his filing fee was "successfully processed." **ROA.749**. That payment confirmation email does *not* state that an appeal was docketed. Again, this is not probative of filing. It shows only that Whittington timely paid the filing fee. But timely *filing*, not timely *payment*, fulfills Rule 4's jurisdictional requirement.

Third, he presented the docket sheet from his case in the district court. **ROA.750–55**. It showed that no notice of appeal was filed on December 21, and that the district court terminated the case on January 10, 2024. **ROA.755**. It also shows the district court sent notice of that termination to the parties. **ROA.755**. At best, this document is not probative of anything. At

---

[2] Harris County moved for reconsideration of the order docketing Whittington's appeal. **ROA.763**. But the district court denied its motion, finding it lacked jurisdiction. **ROA.776** (quoting *Marrese v. Am. Acad. of Orthopedic Surgeons*, 470 U.S. 373, 379 (1985) ("In general, filing of a notice of appeal confers jurisdiction on the courts of appeals and divests the district court of jurisdiction . . . "). This was correct, but unfortunate: The compressed timeframe between Whittington's motion and the district court's grant thereof deprived the county of an opportunity to respond.

No. 24-20172

worst, it is probative that Whittington failed to file a timely notice of appeal—and that he received notice of the docket termination.

Finally, Whittington provided an email sent by a district court employee on April 4, 2024, "verify[ing]" receipt of the December 21 payment. ROA.756. The email also clarified that "the payment screen appears before the docket entry is completed, so *it is possible to pay the filing fee without completing the docket entry in its entirety.*" ROA.756 (emphasis added). So this email again confirms payment alone. More importantly, though, it provides a significant reason why payment confirmation is not probative of timely filing.

Based on this evidence, the district court found "[t]he evidence attached to the Motion demonstrates that [Whittington] paid the requisite filing fee and timely filed . . . but the Notice of Appeal was not docketed due to a technical error." *Ibid.*

This finding appears clearly erroneous. Whittington presented only evidence of payment, and his own exhibit explains that payment can occur before an appellant completes the filing. He does not even present an affirmative allegation that he completed the docket entry after the payment screen. ROA.744–45. Moreover, he presented no evidence of any "technical error." Nor does he allege one occurred—he merely states the notice was not docketed "for an unknown reason." ROA.745. So the district court lacked any evidentiary basis to find one occurred. In sum, Whittington provided only evidence of payment, supplemented by other evidence clarifying that payment does *not* indicate a complete docket entry.

It is also worth noting what Whittington's submission lacked. Attorneys practicing in the Fifth Circuit are presumed to have notice of the court's electronic filing procedures. Our rules provide that a document is filed and entered on the docket not just upon a user's "transmission of a document,"

16

but "*together with* the court's transmission of a Notice of Docket Activity." 5TH CIR. R. 25.2.4 (emphasis added). When the court receives a docketed notice of appeal, it sends counsel additional information advising them of other filing requirements. *See* 5TH CIR. R. 3. Failure to receive these documents thus puts plaintiffs on notice of a filing problem.[3] Whittington had seven remaining days to file his notice of appeal, but did not do so. And his counsel knew the appeal was not docketed by at least January 20, 2024— months before his exchange with the district court. ROA.772.

Whittington provided no evidence to show that he timely appealed. The district court erred in finding otherwise. And absent a timely notice of appeal, we lack subject-matter jurisdiction. *Bowles*, 551 U.S. at 213 ("[I]t is no less 'jurisdictional' when Congress prohibits federal courts from adjudicating an otherwise legitimate 'class of cases' after a certain period has elapsed from final judgment."). So it is unclear to me how we can assert jurisdiction over this appeal.

## II

Because a majority of this panel disagrees, it proceeds to the merits. *Cf. Moore v. Harper*, 600 U.S. 1, 55–56 (2023) (Thomas, J., dissenting). And it is probably correct to reverse the district court's grant of summary judgment on Whittington's claims of race discrimination and retaliation. *See ante* at 8–11. Whittington at least creates a genuine issue of material fact regarding pretext and retaliation. At this stage, no more is required.

---

[3] Electronic filings are well within "counsel's reasonable control." *Trevino v. City of Fort Worth*, 944 F.3d 567, 571 (5th Cir. 2019). And parties have "a duty of diligence to inquire about the status of their case." *Ibid.*; *see also Fox v. Am. Airlines, Inc.*, 389 F.3d 1291, 1294 (D.C. Cir. 2004) (describing CM/ECF failure as "an updated version of the classic 'my dog ate my homework' line").

No. 24-20172

As to Whittington's hostile work environment claim, Fifth Circuit precedent imposes a high bar. For example, this court rejected a hostile work environment claim based on allegations that black officers systematically received worse positions, uniforms, equipment, and punishment; were called "monkey boy" and the "colored coalition"; and suffered other mistreatment. *Clark v. City of Alexandria*, 116 F.4th 472, 480–81 (5th Cir. 2022). Such allegations "fail[ed] to rise to the level of a hostile work environment as required by our precedent." *Id.* at 481. The majority does not reconcile its decision to *Clark*.