**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **BERT W. WHITTINGTON,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No.: 4:21-cv-3220** |
| | § | |
| | § | |
| **KIRK WAYNE BONSAL, *ET. AL.*,** | § | |
| **Defendants.** | § | |

## <u>JOINT PRETRIAL ORDER</u>

1. **APPEARANCE OF COUNSEL**
   (List each party, its counsel, and counsel's address, email address and telephone number in separate paragraphs)

   **A.      Attorney for Plaintiff**

   **Philip J. Orth, III**
   State Bar No. 15323070 / Federal Bar No. 77532
   philip.orth@yahoo.com

   16406 Lamplighter Street
   Crosby, Texas 77532
   Telephone: (713) 520-8333

   **B.      Attorneys for Defendant**
   **         Harris County**

   **Melissa G. Martin**
   State Bar No. 24039035/ Federal Bar No. 38613
   Melissa.Martin@harriscountytx.gov
   **Radha Thiagarajan**
   State Bar No.  00784154/Federal Bar No. 20217
   Radha.Thiagarajan@harriscountytx.gov

   1019 Congress St.
   Houston, Texas 77002
   Telephone:  (713) 274-5354

2. **STATEMENT OF THE CASE**
   (Give a brief statement of the case, one that the Judge could read to the jury panel for an introduction to the facts and parties; include names, dates and places).

Harris County Constable Precinct 3 is an elected law enforcement office within Harris County, Texas led by elected Constable Sherman Eagleton. During the events made the basis of this claim, Plaintiff Bert Whittington was a K9 officer assigned within the Crime Interdiction Unit in the office of Constable Precinct 3. Whittington contends he suffered unlawful discrimination on the basis of his race, African American, when his employment was terminated. Whittington further contends that he suffered a hostile work environment and experienced retaliation because he opposed unlawful discrimination. Harris County contends that Whittington was terminated for lawful reasons because he was determined to have engaged in multiple policy violations that were confirmed through an internal investigation. Harris County denies the existence of a hostile work environment within Constable Precinct 3 and denies that Whittington was retaliated against or that Whittington opposed unlawful discrimination.

**3. JURISDICTION**
(Briefly specify the jurisdiction of the subject matter and the parties. If there is an unresolved jurisdictional question, state it)

This Court has jurisdiction pursuant to 28 U.S.C. §1331 because the suit is made pursuant to 42 U.S.C. §2000e *et seq*. There is no unresolved jurisdictional challenge.

**4. MOTIONS**
(List pending motions)

A motion to quash trial subpoenas [Doc. 88] filed by Defendant is pending and set on the motion docket for May 21, 2026. The parties anticipate filing standard motions in limine.

**5. CONTENTIONS OF THE PARTIES**
(State concisely in separate paragraphs each party's claims.)

**A. Plaintiff's Contentions**

Whittington contends that the disciplinary actions taken against him by Harris County were pretextual and in response to Whittington complaining about a racially hostile workplace. It is contended that the disciplinary actions taken against Whittington were based on grossly

exaggerated and, in some instances, fabricated facts designed to reach an adverse employment outcome with Whittington.

Whittington contends that, based on his race as an African-American, he was treated worse than other employees of other races and that the racially discriminatory practices within the workplace were systemic. Whittington contends that he complained about the discriminatory practices to superiors, but that many of his superiors were involved in committing the unlawful practices. And, that the retaliation taken against Whittington was so swift, harsh, and oppressive that his only reasonable recourse was to retain an attorney. In fact, it will be shown that it was Whittington's complaints that prompted the punitive actions against him. Had Whittington not complained about the racial discrimination in the workplace, he may have still been employed with Harris County.

Whittington contends that after his termination, he diligently tried to obtain new gainful employment, but that Harris County (through its agents) blacklisted him. This blacklisting and disciplinary history created by Harris County against Whittington prevented him from ever obtaining new gainful, particular given that prospective employers trusted Harris County as to being truthful about Whittington – when in fact Harris County was not being truthful.

These circumstances as a whole harmed Whittington's mental health which also manifested into physical ailments. These health issues were documented by healthcare professionals.

**B. Defendant's Contentions**

Harris County contends that Whittington engaged in multiple policy violations that were substantiated by independent and non-biased IAD investigations. These infractions support a legitimate non-discriminatory basis for Whittington's termination.

Harris county contends that Whittington's allegations do not support a hostile work environment. The events of which Whittington complains were not because of his race, do not rise to the level of severe or pervasive, did not alter the terms or conditions of Whittington's employment, and did not create a hostile or abusive work environment. Nonetheless, Harris County had exercised reasonable care to prevent harassing behavior and Whittington unreasonably failed to take advantage of opportunities provided by Harris County to avoid harm. Moreover, to the degree that Whittington alleges harassment by co-workers, Harris County did not know nor should have known of the harassment because Whittington never complained that he was being subjected to harassment. Harassment was not known or communicated to a person who had the authority under Harris County and Precinct 3 policies to receive, address, or report a harassment complaint. Nor was the harassment so open and obvious that Harris County should have known of it.

As to retaliation, Whittington never complained about unlawful employment practices based on race and therefore did not engage in protected 'opposition' activity to support a retaliation claim. Further, to the degree Whittington alleges that he did engage in protected opposition, Harris County contends that Whittington's termination was not in retaliation for of such opposition.

Harris County further contends that Whittington is not entitled to the remedies he seeks, such as having his TCOLE designation and his personnel file changed as such remedies are not provided by statute. Further, with regard to Whittington's damages, both actual, compensatory or exemplary, such damages are inflated. Finally, Whittington failed to mitigate his damages.

6. **ADMISSIONS OF FACT:**
   (List all facts that require no proof.)

   1. Plaintiff began employment with Harris County Constable Precinct 3 in January, 2017 as a deputy constable.

   2. In April, 2017 Plaintiff became a K9 officer within the Crime Interdiction Unit.

4

3. Plaintiff's immediate supervisor during the events made the basis of this claim was Sergeant Troy Barringer.

4. Within Plaintiff's chain of command was Sergeant Troy Barringer who reported to Major Isaac Villareal, who reported to Chief Bonsal who reported to Constable Eagleton.

5. Plaintiff appeared before the Administrative Disciplinary Committee on August 27, 2020.

6. Plaintiff was terminated on August 28, 2020.

7. On September 23, 2020, following an internal appeal by Whittington, Constable Eagleton issued a memo to Plaintiff stating he is upholding the termination decision.

8. Plaintiff filed an Initial Charge of Discrimination with the EEOC on June 2, 2021.

9. Plaintiff filed an Amended Charge of Discrimination with the EEOC on June 24, 2021.

10. The EEOC issued a Right to Sue Notice on July 6, 2021.

11. Plaintiff filed this suit on October 4, 2021.

**7. CONTESTED ISSUES OF FACTS:**
(List all material facts in controversy.)

1. Plaintiff contests that the disciplinary actions taken against him during employment were legitimate.

2. Plaintiff contests that his employment termination was justified.

3. Plaintiff contests that the classification of "General Discharge" on his TCOLE F-5 report was justified.

4. Plaintiff contests that the Defendant and its agents (as an employer) maintained a workplace free of racial discrimination.

5. Plaintiff contests that he was not blacklisted through Harris County's agents preventing him from obtaining new gainful employment.

6. Defendant contests that Plaintiff was terminated because of his race.

7. Defendant contests that Plaintiff was subjected to harassment based on his race.

8.    Defendant contests that Plaintiff reported any harassment or race discrimination to anyone at Precinct 3 with authority to remedy the alleged unlawful behavior.

9.    Defendant contests that Plaintiff's termination was in retaliation for engaging in a protected activity.

10.   Defendant contests the claim that a similar situated employee was treated more favorably than Plaintiff.

11.   Defendant contests the claim that Harris County Precinct 2 did not hire Plaintiff due to the affirmative acts of someone within Harris County Precinct 3 advising not to hire Plaintiff.

**8.    AGREED PROPOSITIONS OF LAW:**
(List the legal propositions that are not in dispute.)

**Discrimination:**

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a).

To establish a prima facie case of employment discrimination, the Plaintiff must establish that he (1) is a member of a protected class; (2) was qualified for the position; (3) was subject to an adverse employment action; and (4) was replaced by someone outside the protected class, or, in the case of disparate treatment, show that other similarly situated employees were treated more favorably. *Bryan v. McKinsey & Co., Inc.,* 375 F.3d 358, 360 (5th Cir. 2004).

A plaintiff may establish a prima facie case by offering either direct or circumstantial evidence of discrimination. *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 219 (5th Cir. 2001) (citations omitted). Direct evidence is evidence which "if believed, proves the fact [of intentional discrimination] without inference or presumption". *Portis v. First Nat. Bank of New Albany, Miss.*,

34 F.3d 325, 328 (5th Cir. 1994) (citing *Brown v. East Miss. Elec. Power Ass'n*, 989 F.2d 858, 861 (5th Cir. 1993)).

A plaintiff who proffers the treatment of a fellow employee must show that the plaintiff's termination was taken "under nearly identical circumstances" as those faced by the comparator. *Garcia v. Prof'l Contract Services, Inc.,* 938 F.3d 236, 244 (5th Cir. 2019) (citing *Lee v. Ks. City So. Rwy. Co.*, 574 F.3d 253, 259-260 (5th Cir. 2009)).

To establish disparate treatment a plaintiff must show that the employer "gave preferential treatment to another employee under 'nearly identical' circumstances"; that is, "'that the misconduct for which [the plaintiff] was discharged was nearly identical to that engaged in by ... [other] employee[s].' *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.,* 245 F.3d 507, 514 (5th Cir. 2001).

The interpretation of "nearly identical" is not synonymous with "identical". *Lee v. Ks. City So. Rwy. Co.*, 574 F.3d 253, 260 (5th Cir. 2009). A comparator employment record "need not comprise the identical number of identical infractions, albeit these records must be comparable". *Lee*, 574 F3.d at 261. The "similitude of employee violations may turn on the 'comparable seriousness' of the offenses for which discipline was meted out". *Id*. (citing *McDonald v. Santa Fe Trail*, 427 U.S. 273, 283 (1976).

Employees are similarly situated when they "held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories." *Id.* at 260. Critically, however, the conduct the employer points to as the reason for the firing must have been "nearly identical" to "that of the proffered comparator who allegedly drew dissimilar employment decisions." *Garcia v. Prof'l Contract Services, Inc.,* 938 F.3d 236, 244 (5th Cir. 2019).

If the plaintiff establishes a prima facie case, the burden then shifts to the defendant to show "a legitimate, nondiscriminatory reason for its actions." If such a reason is shown, the burden shifts back to the plaintiff to demonstrate that either: "(1) the employer's proffered reason is not true but is instead a pretext for discrimination; or (2) that the employer's reason, while true, is not the only reason for its conduct, and another motivating factor is the plaintiff's protected characteristic". *Roberts v. Lubrizol Corp.,* 582 Fed. Appx. 455, 458 (5th Cir. 2014).

When a plaintiff alleges disparate treatment, "liability depends on whether the protected trait actually motivated the employer's decision." *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 141, 120 S. Ct. 2097, 2105, 147 L. Ed. 2d 105 (2000); citing *Hazen Paper Co. v. Biggins,* 507 U.S. 604, 610, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993).

The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff. *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 143, 120 S. Ct. 2097, 2106, 147 L. Ed. 2d 105 (2000).

The ultimate question is whether the employer intentionally discriminated, and proof that the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's proffered reason ... is correct. In other words, "[i]t is not enough ... to *dis* believe the employer; the factfinder must *believe* the plaintiff's explanation of intentional discrimination." *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 146-147, 120 S. Ct. 2097, 2108, 147 L. Ed. 2d 105 (2000).

"Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive." *Reeves*, 530 U.S. at 147 (citing *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 517 (1993). "In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the

explanation that the employer is dissembling to cover up a discriminatory purpose." *Reeves*, 530 U.S. at 147.

A plaintiff must produce "substantial evidence" that the employer's proffered reason is pretext for race discrimination. Evidence is substantial if it is of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions. *Watkins v. Tregre*, 997 F.3d 275, 283 (5th Cir. 2021). Pretext may be established by the plaintiff "either through evidence of disparate treatment or by showing that [the defendant's] proffered explanation is false of 'unworthy of credence'". *Watkins*, 997 F.3d at 283 (citing *Laxton v. Gap, Inc.*, 333 F3d 572, 578 (5th Cir. 2003).

**Retaliation:**

To establish a prima facie case of retaliation, Plaintiff must show: (1) he engaged in protected activity; (2) an adverse employment action occurred; and (3) a causal link existed between the protected activity and adverse action. *Turner v. Baylor Richardson Med. Ctr.,* 476 F.3d 337, 348 (5th Cir. 2007).

"A vague complaint, without any reference to an unlawful employment practice under Title VII, does not constitute protected activity." *Davis v. Dallas Indep. Sch. Dist.*, 448 Fed.Appx. 485, 493 (5th Cir. 2011). The plaintiff "must refer to conduct that could plausibly be considered discriminatory in intent or effect, thus alerting the employer of its alleged discriminatory practice". *Allen v. Envirogreen Landscape Pros., Inc.*, 721 F.App'x 322, 326-327 (5th Cir. 2017) (citing *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 349 (5th Cir. 2007)).

Under Title VII, an employee has engaged in protected activity if he has (1) "opposed any practice made an unlawful employment practice by this subchapter," or (2) "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under

this subchapter." 42 U.S.C. § 2000e–3(a); *Byers v. Dallas Morning News, Inc.,* 209 F.3d 419, 427– 28 (5th Cir. 2000).

Title VII prohibits retaliation "because [a plaintiff] has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3. This is known as the "opposition clause." *See, e.g. Douglas v. DynMcDermott Petroleum Operations Co.*, 144 F.3d 364, 372-73 (5th Cir. 1998).

To trigger the protections of the opposition clause, Plaintiff must establish that he opposed an unlawful employment practice and that he had an "objectively reasonable belief" that the opposed employment practice was unlawful. *See Armstrong v. K&B Louisiana Corp.*, 488 F. App'x 779, 781-82 (5th Cir. 2012) (citing *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 428 (5th Cir. 2000)).

To establish the causation prong of a *prima facie* case of retaliation, Plaintiff must show the decision maker knew about Plaintiff's allegedly protected actions. *See Clark County School Dist.v Breeden,* 532 U.S. 268, 273 (2001); *Manning v. Chevron Chem. Co.,* 332 F.3d 874, 883 (5th Cir. 2003). "If an employer is unaware of an employee's protected conduct at the time of the adverse employment action, the employer plainly could not have retaliated against the employee based on that conduct." *Chaney v. New Orleans Pub. Facility Mgmt., Inc.,* 179 F.3d 164, 168 (5th Cir. 1999).

**Hostile Work Environment:**

To establish a prima facie case for a race-based hostile work environment claim, a plaintiff must show: "(1) [he] belongs to a protected group; (2) [he] was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment; (5) the employer knew or should have

known of the harassment in question and failed to take prompt remedial action. *Ayorinde v. Team Indus. Services Inc.,* 121 F.4th 500, 509 (5th Cir. 2024).

The harassing behavior must be "sufficiently severe or pervasive" such that it "alters the conditions of the victim's employment and creates an abusive environment," and the environment must be objectively and subjectively hostile to the victim of racial discrimination. *Id.*

When analyzing whether the behavior is sufficiently severe or pervasive, we "consider the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. *Id.*

In the 5th Circuit, the Ellerth/Faragher defense is applicable to race based hostile work environment claims. *Walker v. Thompson*, 214 F.3d 615, 626 (5th Cir. 2000). "The two elements of this affirmative defense are: '(a) that the employer exercised reasonable care to prevent and correct promptly any [racially] harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise." *Walker*, 214 F.3d at 626.

An employer may be vicariously liable for an employee's unlawful harassment only when the employer has empowered that employee to take tangible employment actions against the victim, *i.e.,* to effect a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits. *Vance v. Ball State Univ.,* 570 U.S. 421, 431, 133 S. Ct. 2434, 2443, 186 L. Ed. 2d 565 (2013). Employer is strictly liable for supervisor harassment that "culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment. *Pennsylvania State Police v. Suders,* 542 U.S. 129, 137, 124 S. Ct. 2342, 2349, 159 L. Ed. 2d 204 (2004).

It is a defense to a hostile work environment claim if an employer establishes the following to avoid liability under Title VII: (1) the employer exercised reasonable care to prevent and correct promptly any racially harassing behavior; and (2) the plaintiff employee unreasonably failed to take advantage of any available preventive or corrective opportunities. *Alzuraqi v. Group 1 Auto., Inc.*, 921 F. Supp. 2d 648, 658 (N.D. Tex. 2013). This defense also applies when a supervisor's harassment does not culminate into a tangible employment action. *Pennsylvania State Police v. Suders,* 542 U.S. 129, 137, 124 S. Ct. 2342, 2349, 159 L. Ed. 2d 204 (2004).

The limitations on Title VII compensatory and punitive damages is found in 42 U.S.C. § 1981a(b). Therefore, damages are capped at $300,000.00. *Vance v. Union Planters Corp.*, 279 F.3d 295, 296 (5th Cir. 2002).

As a government entity, no punitive damages can be awarded against Harris County as Harris County is immune from punitive damages.

**9. CONTESTED PROPOSITIONS OF LAW:**
(State briefly the unresolved questions of law, with authorities to support each.)

According to the U.S. Equal Employment Opportunity Commission, "[c]ompensatory damages pay victims for out-of-pocket expenses caused by the discrimination (such as costs associated with a job search or medical expenses) and compensate them for any emotional harm suffered (such as mental anguish, inconvenience, or loss of enjoyment of life). Compensatory damages do not include actual damages.

**10. EXHIBITS:**

 A. On a form similar to the one provided by the clerk, each party will attach two lists of all exhibits expected to be offered and will make the exhibits available for examination by opposing counsel. All documentary exhibits must be exchanged before trial, except for rebuttal exhibits or those whose use cannot be anticipated.)

 B. A party requiring authentication of an exhibit must notify the offering counsel in writing within 7 days after the exhibit is listed and made available; failure to object

in advance of the trial in writing concedes authenticity.

C.  Within reason, other objections to admissibility of exhibits must be made at least 7 days before trial; the Court will be notified in writing of disputes, with copies of the disputed exhibit and authority.

D.  Parties must mark their exhibits to include the date and case number on each.

E.  At the trial, the first step will be the offer and receipt in evidence of exhibits.

## 11.  WITNESSES:

A.  List the names and addresses of witnesses who may be called with a brief statement of the nature of their testimony. Include the qualifications of expert witnesses; these will be used to qualify the expert at trial.

B.  Include: "If other witnesses to be called at trial become known, their names, addresses, and subject of their testimony will be reported to opposing counsel in writing as soon as they are known; this does not apply to rebuttal or impeachment witnesses."

Plaintiff's Witness List is attached hereto.

Defendant's Witness List is attached hereto.

## 12.  SETTLEMENT
(State that all settlement efforts have been exhausted, that the case cannot be settled, and that the case will have to be tried.)

Settlement efforts have been exhausted and resulted in an impasse. Therefore, the case will have to be tried.

## 13.  TRIAL

### A.  Probable length of trial

Defendant anticipates the trial should last 3-4 days, due to the fact it is a single Plaintiff Title VII case.

### B.  Logistical Problems, including availability of witnesses, out-of-state people, bulky exhibits, and demonstrations.

Defendant does not anticipate any logistical problems.

## 14.  ATTACHMENTS

1. Proposed questions for the voir dire examination.

2. Proposed charge, including instructions, definitions, and special interrogatories, with authority.

**DATE**:_____

_____
THE HONORABLE ALFRED H. BENNETT
UNITED STATES DISTRICT JUDGE

Approved:

Respectfully submitted,

By:  */s/ Melissa G. Martin*_____
**MELISSA G. MARTIN**
Assistant County Attorney
State Bar No. 24039035
Fed. Bar No. 38613
Tel: (713) 274-5354 (direct)
Fax: (713) 755-8823
Melissa.Martin@harriscountytx.gov
**RADHA THIAGARAJAN**
Senior Assistant County Attorney
State Bar No. 00784154
Federal Bar No. 20217
Radha.Thiagarajan@harriscountytx.gov
Harris County Attorney's Office
1019 Congress
Houston, Texas 77002

**ATTORNEYS FOR DEFENDANT**
**HARRIS COUNTY**

Approved,

/s/ Philip J. Orth, III_____
PHILIP J. ORTH, III
SBN: 15323070
16406 Lamplighter
Crosby, Texas  77532
713-520-8333
772-217-8162 – Fax

14

Philip.Orth@yahoo.com
ATTORNEY FOR PLAINTIFF